327 So.2d 607 (1976)
Joseph Clarence BORNE
v.
Thomas BOURG, a/k/a Teemott, et al.
No. 6806.
Court of Appeal of Louisiana, Fourth Circuit.
February 10, 1976.
Rehearing Denied March 16, 1976.
*608 Frederick J. Gisevius, Jr., and David E. Caruso, Jr., New Orleans, for plaintiff-appellee.
O'Keefe, O'Keefe & Berrigan, Peggy Vicknair and William J. Goliwas, New Orleans, for defendants-appellees.
George B. Richard, Marrero, for Thomas Bourg, defendant-appellant.
Before SAMUEL, REDMANN and STOULIG, JJ.
SAMUEL, Judge.
This is a suit to recover damages for personal injuries sustained while plaintiff was a patron of Schnell's Sports Center Restaurant and Bar in Marrero. The defendants are Thomas Bourg, another patron who caused the injuries in suit, Nolan Schnell, Ray Carbo and Anthony Nicosia, respectively the owner, a bartender and a manager of Schnell's Sports Center Restaurant and Bar. Coal Operators Casualty Company (now known as Rockwood Insurance Company), liability insurer of the business establishment, later was joined as a defendant.
Following trial on the merits, an in solido judgment in the sum of $32,557.38 was rendered in favor of plaintiff and against all defendants except Nicosia. The judgment dismissed the suit against Nicosia who was not present at the time the injuries in suit were sustained. All defendants cast have appealed. The appeals do not involve the dismissal of the suit as to Nicosia and that issue is not before us.
After the record had been lodged in this court, we issued a rule, ex proprio motu, to show cause why the appeal taken by Bourg should not be dismissed for failure to post an appeal bond. Subsequently, plaintiffappellee filed a motion to dismiss that appeal.

ON THE RULE AND MOTION TO DISMISS
The record reflects Bourg timely filed a petition for a suspensive and a devolutive appeal. The appeal order was signed by the trial judge on the same day that petition was filed. No bond of any kind was ever furnished by Bourg and the time allowed for furnishing his appeal security has long expired. The other defendants cast, Schnell, Carbo and Rockwood Insurance, timely filed their petition for appeal which was granted "upon their furnishing legally acceptable security in the amount prescribed by law." On the day the appeal order was signed those three defendants furnished a surety company bond in the amount of $65,000.
Bourg's position is that the bond posted by the three other appellants makes it unnecessary for him to post an additional bond inasmuch as the judgment casts him and those other defendants in solido. He relies on our settled jurisprudence that only one order of appeal, one appeal bond and one appellate filing fee,[1] are necessary for multiple appellants from a single judgment.[2]
We agree with that broad jurisprudential rule, but only when the required bond for suspensive appeal actually furnishes security for all appellants and, perhaps, when the required bond for devolutive appeal in fact affords security for all costs due by all appellants, i. e., when the appellee in either a suspensive or devolutive appeal is afforded the full required appeal security.
Here, the only security furnished is the bond filed by Schnell, Carbo and Rockwood Insurance. That bond binds its surety only for those three appellants; the bond does not mention Bourg. Thus, as to both the money judgment and costs, the appellee is without recourse against the *609 surety insofar as Bourg is concerned.[3] Under these circumstances, the rule relied on by Bourg has no application. Accordingly, we dismiss his appeal.

ON THE MERITS
Plaintiff's injuries were incurred on August 23, 1969 at about 3 a.m. Bourg struck plaintiff in the left eye with his fingers causing blindness in that eye. The suit against Schnell and the defendant insurer is based upon the former's alleged failure as the proprietor of a public place to protect plaintiff, his guest or customer, from a known danger. Under the doctrine of respondeat superior, Schnell and the insurer are responsible for the action or non-action of Carbo, the bartender, who was in charge of Schnell's establishment when the event took place. Carbo, individually, is responsible for his own actions or lack thereof.
Testimony relative to the occurrence of the incident was given by the plaintiff, by defendants Bourg and Carbo, and by Murphy Sannsardo, an independent witness called by the defendants. In addition, defendants called three other witnesses in an effort to establish Bourg and the plaintiff were friendly drinking buddies.[4]
The three appellants contend the incident was unexpected and occurred so quickly it could not reasonably have been anticipated and there was not sufficient time to take preventative action. Alternatively, they contend the award is excessive. We do not agree.
We find the following facts, which are in agreement with the finding of facts by the trial judge:
Plaintiff entered the defendant establishment, seated himself at the bar and ordered a plate of fried seafood. Shortly thereafter Bourg also entered the establishment and seated himself at the bar. Bourg, the larger of the two men, was obviously intoxicated. When plaintiff's order was served, Bourg, got up from his seat and moved over to where the plaintiff was beginning to eat. Without invitation, he reached into plaintiff's plate and proceeded to remove portions of food. Plaintiff objected and an argument ensued between the two men. Plaintiff also directed his objections to Carbo, the bartender on duty.
Carbo recognized, not only that Bourg was intoxicated, but also that a dangerous confrontation was developing between the two men. He cautioned both parties and placed a telephone call to the Jefferson Parish sheriff's office for the purpose of requesting police assistance. However, he specifically asked for a Deputy Troxclair and, upon being informed that this deputy was not then available, Carbo terminated the call without requesting assistance, apparently because he was unwilling to pursue his complaint with anyone other than Troxclair.
Plaintiff ordered another plate of seafood and moved to the other end of the bar. When the second order was served, Bourg also moved to the other end of the bar and continued to disturb and argue with plaintiff. Plaintiff moved his seat several times in an effort to escape Bourg, but the latter persisted and proceeded to take other portions of food from plaintiff's new order. Plaintiff again complained to Carbo and this time Carbo ordered Bourg from the premises under threats of calling the police. At this time Bourg told the plaintiff he would like to "poke his eyes out". Bourg then extended his fingers and jabbed at plaintiff's face, striking him in the left eye and causing the injuries in suit.
*610 The basic duty owed to a patron by an establishment such as that in suit is set forth in the case of Anderson v. Clements, La.App., 284 So.2d 341:
"The basic duty owed to a patron by an establishment such as that of the defendant was set forth in DeHart v. Travelers Insurance Company, which involved an assault upon a patron by another patron while the owner of the coffee house in which the assault took place was absent from the premises. There the court stated that while the proprietor of a public place is not the guarantor of his patrons' safety, he owes them a duty to exercise reasonable care to protect them from harm at the hands of a fellow-guest or at the hands of his employees; such a proprietor owes a duty to guests to protect them from insult, annoynance and danger, and his guests have a right to rely on the belief they are in an orderly house and are protected from injury by the exercise of reasonable care for their safety by the operator of the establishment or his representative.
Under our law part of the duty imposed on those in charge of a business establishment, if time allows, is to call the police in the event of a disturbance in order to prevent injury to patrons. In Matranga v. Travelers Insurance Company, wherein liability was imposed on the owner of a barroom, the court made the following statement:
`It is the duty of every storekeeper and restaurant operator to use reasonable care in the protection of his patrons and guests. Particularly, must he, himself, refrain from any act or conduct likely to cause injury to a guest. Had the argument been between two other guests rather than between the proprietor and his brother, who had been assisting him in the restaurant at the time, it would have been defendant, Zibilich's duty to eject the offenders or called [sic] for the police. Under the circumstances, defendant, Zibilich's conduct constituted negligence.'
The duty to call the police if time allows was recognized in Rodney v. Mansur, where the court stated the person in charge of an establishment, such as the one in this suit, has the duty to call the police in the face of danger in order to protect patrons of the establishment and that failure to comply with this duty would impose liability. However, the court refused to apply the principle for the reason that the person in charge of the business did not delay a sufficient amount of time in calling the police to justify imposing liability."
Here Carbo, who was in charge of the defendant establishment, knew the situation was potentially dangerous. By his own admission he made the call for Deputy Troxclair because he knew something might happen to the plaintiff, who was "getting a rough time from Bourg", and he made the call for Troxclair in order to stop the incident before it happened. Yet, although he had the sheriff's office on the telephone, he did not request assistance simply because Troxclair was not available. He did nothing to protect plaintiff except to "caution" Bourg and, after a lapse of some time during which the situation became worse, order Bourg out of the establishment. Under these circumstances, we find, as did the trial judge, the defendant establishment failed in its duty to safeguard the welfare of its patrons and that plaintiff's injuries were a direct result of such failure. Accordingly, there is liability on the part of appellants.
Relative to quantum, the total award of $32,557.38 consisted of $2,557.38 for special damages in the form of medical expenses and $30,000 not only for loss of sight of the eye and pain and suffering, but also for past and future loss of income.
Plaintiff was 52 years of age at the time of the incident. The blow to his left eye caused a large laceration of the sclera (the tough white supporting tunic of the eyeball), resulting in loss of sight of the eye. The eye itself has not been removed, although *611 plaintiff does wear glasses. He was in a hospital for seventeen days. He has not worked since the incident and the record contains expert testimony reflecting that, in the work he had previously performed, he would be a danger to himself and to others because of his now limited vision.
Accordingly, following our consideration of the amount of awards in other cases with somewhat similar injuries,[5] we do not find that the award in this case is so excessive as to constitute an abuse of the "much discretion" given the trial judge by LSA-C.C. Art. 1934(3).
For the reasons assigned, the appeal taken herein by Thomas Bourg is dismissed and the judgment appealed from is affirmed.
Affirmed.
NOTES
[1] The one appellate filing fee has reference to the Courts of Appeal and not necessarily to the Supreme Court. See LSA-R.S. 13:353 and 13:126(2).
[2] See In Re: Wingate, La.App., 189 So.2d 1; In Re Succession of Abraham, La.App., 136 So.2d 471; Hernandez v. Ethyl Corporation, La.App., 83 So.2d 150.
[3] We note that in this case there could be liability on the part of Bourg and no liability on the part of the three other appellants.
[4] In this regard, the record fails to establish anything other than that plaintiff and Bourg were seen in different establishments at the same time over a period of years, but not with each other.
[5] See Walker v. Champion, 288 So.2d 44 (La.S.Ct.); Sistrunk v. Aetna Casualty and Surety Company, La.App., 267 So.2d 784; Schnell v. Travelers Insurance Company, La.App., 264 So.2d 346; Roberie v. Sinclair Refining Company, La.App., 252 So.2d 488; Spizer v. Dixie Brewing Co., La.App., 210 So.2d 528.