351 So.2d 1280 (1977)
Roger GUIDRY et al.
v.
Leo TOUPS et al.
No. 11537.
Court of Appeal of Louisiana, First Circuit.
October 17, 1977.
Rehearing Denied November 21, 1977.
Writ Refused January 11, 1978.
*1281 Leslie J. Clement, Jr., Boudreaux & Clement, Thibodaux, for plaintiffs and appellants.
Herbert O'Niell, Thibodaux, for defendant and appellee Leo Toups.
Stanley L. Perry, Galliano, for defendant and appellee Harris Pitre.
Before LOTTINGER, EDWARDS and PONDER, JJ.
LOTTINGER, Judge.
This is an action ex delicto involving two separate causes of action, one by the plaintiffs Roger Guidry, individually and as the tutor of the minor Mandy Guidry, Wayne Guidry and Hazel Guidry Bourgeois, as the heirs of Cyric Guidry for his wrongful death, and a second cause of action by Wayne Guidry for his personal injuries. The defendants are Leo Toups, and Harris Pitre, d/b/a The Stagecoach Lounge. From a judgment in favor of the defendants, plaintiffs have appealed.
The record points out that the deceased, Cyric Guidry, his son, Wayne Guidry, and a friend, Brenda Boudreaux, together went to the Stagecoach Lounge, owned by the defendant Harris Pitre, in Galliano, Louisiana, on the night of November 23, 1974, for the purpose of socializing and attending a dance. The defendant Leo Toups and his wife were also in attendance. As the evidence unfolds in the record, it seems that Brenda Boudreaux told at least Cyric Guidry that Leo Toups had been harassing her during the night. Sometime after midnight as the decedent, his son, and Ms. Boudreaux were leaving the lounge, the three were momentarily separated with the decedent standing at the bar in the lounge, and Ms. Boudreaux standing at the exit door awaiting the decedent and his son. While at the door Leo Toups and his wife approached also leaving. Ms. Boudreaux testified that Leo Toups made a threatening gesture to her, as if to strike her with his hand, where-upon the decedent seeing this walked over to the defendant, Leo Toups, and struck him in the face with his fist, causing him to fall back against a wall, and then to the floor. Upon seeing this, Harris Pitre, the owner of the Stagecoach Lounge, came from behind the bar and according to his testimony told both the decedent and the defendant Toups that he wanted no fighting in his establishment and that both should leave.
The defendant Toups left through the front door with one Vinton Crosby, the son-in-law of Harris Pitre, and went out into the front parking area of the lounge. The decedent remained in the lounge. As this bizarre series of events unfolds, a few moments later Leo Toups returned to the lounge and stabbed the plaintiff, Wayne Guidry. Wayne Guidry contended in his testimony that when he saw Leo Toups returning and walking towards his father he attempted to intercept him simply to quieten him down so that there would be no trouble. He did not hit nor attempt to hit him, but rather was pushed against a wall by Toups and stabbed. Another witness, however, testified that he separated Wayne Guidry and Leo Toups who he found in a crouched position punching at each other. It was immediately after he separated these two and Leo Toups left the lounge for the second time that Wayne Guidry exclaimed that he had been stabbed.
Lastly, the decedent Cyric Guidry and the defendant Leo Toups are seen in the front parking lot by the defendant, Harris Pitre, through the opened front door of the lounge, fighting. Vinton Crosby testified that Leo Toups had a knife in his hand when the two were fighting in the parking lot.
After the initial encounter an attempt was made to phone the sheriff's office by use of the pay phone in the lounge. This was found to be inoperative, and Harris Pitre proceeded to his house which was located to the rear of the lounge for the purpose of calling the sheriff's office. In addition, his son-in-law, Vinton Crosby, proceeded to his own house for the purpose of *1282 calling the sheriff's office. Pitre testified that he left to call the sheriff's office while Leo Toups and the decedent were still fighting in the parking lot, and Crosby testified that he saw the two fighting in the parking lot as he left to go to his own house to call the sheriff's office.
As a result of the fight between Leo Toups and Cyric Guidry in the parking lot, Cyric Guidry received wounds sufficient to cause his death.
The Trial Judge in his written reasons for judgment said "Because of the serious nature of this case, and because it arose out of a fast-moving, emotionally charged series of events in which there are great possibilities for confusion and error on the part of the witnesses, this Court was particularly attentive to the demeanor of the witnesses." The Trial Judge in his findings of facts stated that the testimony of Brenda Boudreaux was "not worthy of belief", and that "Wayne Guidry's testimony basically parallels that of Brenda Boudreaux on most points and is at its best suspect."
The Trial Judge continued,
"This matter involves three separate fights. Two fights were started by Cyric Guidry striking Leo Toups. How the third fight started, no one knows. Neither the plaintiffs' nor defendants' witnesses could testify who started the fight on the outside of the Stage Coach Inn. Since Cyric Guidry had in fact started the other two fights, it is reasonable to assume that he was also the aggressor in the third fight.
"The Court finds, as a matter of fact, that Cyric Guidry had no reason or justification to attack Leo Toups. The Court further finds that Leo Toups did not use excessive force in the defense of his person against either Wayne or Cyric Guidry."
In appealing, the plaintiffs contend that the Trial Judge erred (1) in finding that Cyric Guidry was not justified in punching Leo Toups in defense of Brenda Boudreaux; (2) in concluding that Leo Toups could not be held legally responsible to the plaintiffs because he was unable to consciously formulate an intent to act; (3) in finding that Leo Toups did not use excessive force against Cyric and/or Wayne Guidry; (4) in concluding that Harris Pitre, owner of the lounge, took every reasonable precaution to protect his guest; and (5) assuming, arguendo, that Cyric Guidry was partially responsible for causing his own death, the Court erred in concluding that his beneficiary heirs are thereby precluded from recovering damages for their father's wrongful death.

ERROR NO. 1
Brenda Boudreaux was the only witness to testify that the defendant Leo Toups raised his hand in a threatening manner to her. Considering that the Trial Judge found her testimony to be without belief, we find no error in his conclusion that the decedent was not justified in punching Leo Toups in defense of Brenda Boudreaux.

ERROR NO. 2
This specification of error is directed primarily to the testimony of Dr. Richard Dawes, a psychiatrist, who testified that from his examination of Leo Toups, he was of the opinion that the defendant was suffering from traumatic amnesia, and that following the first blow struck, the defendant was operating on pure "animal instinct."
The Trial Judge in his written reasons for judgment did conclude that because of the testimony of the psychiatrist that the defendant could not be held legally responsible to the plaintiffs. However, the Trial Judge in his written reasons for judgment prior to his discussion of the expert testimony had already concluded as a matter of fact that the decedent had no reason or justification to attack the defendant Toups, and that the defendant did not use excessive force in defense of his person against either the plaintiff Wayne Guidry or the decedent Cyric Guidry. The Trial Judge had already concluded that the defendant Leo Toups was not at fault, and any discussion *1283 of the testimony by the psychiatrist was merely an additional reason on the part of the Trial Judge for finding the defendant not liable. Considering the great weight that must be given to the findings of fact by the Trial Judge, and our conclusion that he has made no error in his findings of fact, nor in his determination that no excessive force was used, we find no need to discuss this specification of error.

ERROR NO. 3
When the defendant Toups returned to the lounge after the first blow was struck, he testified that he returned to find his wife who was still inside. He had just been knocked to the floor with one punch by Cyric Guidry who was some 60 pounds lighter and 6 inches shorter. As he enters the lounge the second time, he is approached by Wayne Guidry. Ray Picou, a disinterested witness, testified that he separated Wayne Guidry and Leo Toups from a crouched position punching each other. Therefore, we have the defendant entering the lounge to find his wife, and he is approached by Wayne Guidry and punches are thrown. Considering that Cyric Guidry was still in the lounge at this time, that Leo Toups had been felled by one punch from the smaller Cyric Guidry and that he now found himself in a fight with the decedent's son, we find no error on the part of the Trial Judge in apparently concluding that Leo Toup feared for his bodily safety, and thus was justified in resorting to the use of a pocket knife for his protection which resulted unfortunately in the stabbing of Wayne Guidry.

ERROR NO. 4
Plaintiffs contend that the defendant Pitre as the owner of the Stagecoach Lounge was negligent in not having an operative telephone available for the purpose of calling the police when he should have known that the single pay phone in the lounge was often out of order, or, he should have employed an individual or individuals qualified and equipped to deal with disturbances caused by patrons while waiting for the police to arrive.
It is well recognized that a proprietor of a public house of entertainment, though not an insurer of the safety of his guest, owes the duty to exercise reasonable care to protect them, both in person and property, from injury at the hands of fellow guest or guests, De Hart v. Travelers Ins. Co., 10 So.2d 597 (La.App. Orl.Cir. 1942), and that a lounge proprietor has a duty to telephone the police for assistance when there is time to do so, Borne v. Bourg, 327 So.2d 607 (La.App. 4th Cir. 1976).
We have been referred to no authorities by the appellants that would mandate that the defendant Harris Pitre have either a working telephone in his premises or a "bouncer".
The Trial Judge from his findings of fact concluded that the defendant Pitre did everything reasonably expected of him. After the first punch was thrown, Pitre told both the decedent and Toups that he wanted no fighting and they should leave. The Trial Judge apparently found that Pitre attempted to call the sheriff's office within sufficient time, and ultimately request for police assistance was made. We find no error in this holding of the Trial Judge.
Further, we do not view the rules as expressed in De Hart, supra, and Borne, supra, as applying to a plaintiff who is the aggressor in a fistic encounter. Here the Trial Judge found the decedent to be the aggressor and we find neither of these two cases to be applicable.

ERROR NO. 5
Inasmuch as we have concluded that there was no actionable fault on the part of either of the defendants, there is no need to discuss this specification of error.
Therefore, for the above and foregoing reasons the judgment of the Trial Court is affirmed. All costs are to be paid by plaintiffs-appellants.
AFFIRMED.
PONDER, Judge, dissenting.
I do not quarrel with the finding of fact by the trial judge since it was based on his *1284 appraisal of the credibility of the witnesses, testifying to contradictory versions. I cannot agree, however, with the conclusion that "Leo Toups did not use excessive force in the defense of his person against either Wayne or Cyric Guidry".
Mr. Toups had the advantage of six inches height and evidently comparable reach over both Guidrys and sixty pounds over one and ninety pounds over the other. There is no evidence that either Guidry used a weapon of any kind. Toups' use of a knife to maim one and kill another seems to me clearly to be excessive force.
I cannot agree with the use of a psychiatrist's testimony of an absence of consciousness as being a reason for no liability. See Watson v. Morrison, 340 So.2d 588 (La.App. 1st Cir., 1976), writ refused La., 341 So.2d 1134 (1977). The case of Yancey v. Maestri (La.App. Orl.Cir., 1934), 155 So. 509, cited by the trial judge, seems to me to be both inapplicable and of doubtful continuing validity.
I therefore dissent.