416 So.2d 948 (1982)
Charles B. McKINNEY, et al.
v.
LOUISIANA NATIONAL BANK and Aetna Life & Casualty Company.
No. 14765.
Court of Appeal of Louisiana, First Circuit.
May 25, 1982.
*949 Patsy Jo McDowell, Baton Rouge, for plaintiffs-appellants Charles B. McKinney and Ruth Fletcher McKinney.
Carey J. Guglielmo, Baton Rouge, for defendants-appellees Louisiana Nat. Bank and The Standard Fire Ins. Co. (erroneously referred to in plaintiffs' petition as Aetna Life & Cas. Co.)
Before ELLIS, PONDER and SAVOIE, JJ.
ELLIS, Judge.
We have carefully read the record and the briefs filed by the parties hereto, and find that the written reasons of the trial judge correctly resolve all factual and legal issues presented. We therefore attach those reasons hereto as an appendix, and adopt them as our own.
For those reasons, the judgment appealed from is affirmed, at plaintiffs' cost.
AFFIRMED.
 APPENDIX
CHARLES B. McKINNEY and | Suit No. 228,542 DIV. "M"
RUTH FLETCHER McKINNEY |
 | 19TH JUDICIAL DISTRICT COURT
VERSUS |
 } PARISH OF EAST BATON ROUGE
 |
LOUISIANA NATIONAL BANK |
and AETNA LIFE AND CASUALTY | STATE OF LOUISIANA
COMPANY |

WRITTEN REASONS FOR JUDGMENT
This is a suit by Charles McKinney and his wife Ruth for damages allegedly suffered during a purse-snatching attempt by two unidentified persons outside a branch bank operated by defendant bank. Plaintiffs assert that defendant bank has a duty to protect its patrons and would-be patrons against such assaults, relying upon an alleged "stricter duty" because the "product" which defendant sells is money, thereby increasing the risk of such assaults on patrons. Defendants, on the other hand, deny that there is any special duty of banks to protect patrons against assaults by unknown assailants, at least where there has been little if any previous indication of such incidents.
Plaintiffs' original petition named Louisiana National Bank as a defendant, as well as Aetna Life and Casualty Company. By stipulation of counsel, the court ordered that The Standard Fire Insurance Company be substituted whereever any reference was made to the Aetna Life and Casualty Company. After defendants answered, and after pre-trial discovery, defendants filed a motion for summary judgment, accompanied by affidavits of two bank employees. Plaintiffs filed a "counter motion on the issue of law" which the court will treat as a motion of summary judgment in plaintiffs' *950 favor. Plaintiffs filed no supporting affidavits, but filed the depositions of Ruth McKinney, her physician, and the bank officer in charge of security.
When the matter came on for hearing, counsel agreed that both motions could be heard at that time, even though plaintiffs' motion would otherwise have been untimely under Article 966 of the Code of Civil Procedure. Moreover, counsel stipulated that there is no genuine issue of material fact, and that only issues of law are presented. The matter was argued, submitted on memoranda and taken under advisement by the Court.
Under the circumstances, the Court perceives two issues to be determined: (1) whether summary judgment is appropriate under these circumstances and (2) whether, on the merits, defendant bank breached any duty owed to Mrs. McKinney.

Appropriateness of Summary Judgment
Articles 966 and 967 of the Code of Civil Procedure authorize and indeed require the trial judge to grant a motion for summary judgment if there is no genuine issue of material fact and if the mover is entitled to judgment as a matter of law. Nevertheless, there is a firm principle repeated in the decisions of our appellate courts that summary judgment should be rendered sparingly, and only when the mover is clearly entitled to judgment. This Court is well aware of the requirement that summary judgment be used with great caution, but entertains little doubt that this is an appropriate case for several reasons.
First, and most important, counsel for all parties stipulated at the hearing on these motions that there is no genuine issue of material fact, and that only issues of law are presented. Most, if not all, of the cases in which appellate tribunals have remanded cases for trial after the trial court had granted a motion for summary judgment are instances in which the unsuccessful party maintained (at the trial level and the appellate level) that there was a genuine issue of material fact. Neither party contends that in the present case, and has so stipulated before the trial judge.
Second, in response to the motion for summary judgment filed by defendants, plaintiffs responded only with their own similar motion and filed no counter-affidavits of any type, apparently being content to rely upon the depositions filed into evidence. While it is true that Article 967 of the Code of Civil Procedure permits a party opposing a motion for summary judgment to support his opposition with depositions rather than affidavits, there is little if anything in the depositions which suggests that the motion in favor of defendants should not be granted.
Finally, there is clear support in the cases for granting motions for summary judgment in an appropriate case. In Cates v. Beauregard Electric Cooperative, Inc., 328 So.2d 367 (La.1976), both the appellate court and the Supreme Court affirmed a summary judgment granted in favor of defendants in a serious personal injury case, on the ground that the victim was contributorily negligent. Of all issues on which summary judgment is overturned, fault of the victim is probably the most common. But even when that is the pertinent issue, summary judgment is appropriate when there is no genuine issue of material fact (as there is none here) and where the mover is clearly entitled to judgment as a matter of law (as is the case in this instance).
The very recent decision of the First Circuit Court of Appeal in Carline v. Lewis, et al, [400 So.2d 1167] No. 14,096 on its docket, decided April 13, [La.App.] 1981 is clearly distinguishable from the instant matter on the issue of appropriateness of summary judgment. Plaintiff claimed that certain defendants, who were the owner and manager of an apartment complex, were liable to her for injuries inflicted by an unknown intruder into her apartment. Summary judgment had been rendered against her in the lower court, but that judgment was reversed by the First Circuit. Plaintiff had claimed that the defendants had warranted that there would be a security guard on duty, and the defendants' answers to interrogatories indicated that an individual had *951 been hired as security guard. However, there was a genuine issue of material fact as to whether the guard had acutally been hired, and if hired, whether he was properly performing his duty on the day in question. Under the circumstances, summary judgment was properly reversed.
In the present matter, no such warranty has been alleged by plaintiffs, nor does one exist. Moreover, the parties have stipulated (as they apparently did not in the Carline case) that there is no genuine issue of material fact.
Therefore, summary judgment is an appropriate vehicle to dispose of this matter.

Decision on the Merits
Plaintiffs assert that defendant bank owed them a duty to protect the wife against assaults by unknown persons on the bank premises, including the parking lot and approaches to the bank. If such a duty exists, it must be that the bank exercise reasonable care to protect business invitees such as Mrs. McKinney from risks which it knows or should know will pose an unreasonable hazard to her physical well-being. There is nothing in the stipulated facts to suggest that the bank has violated its duty in this respect.
A determination that a defendant has breached a duty toward the plaintiff must be based upon a showing that the magnitude of harm threatened to plaintiff (a combination of the likelihood of injury and the severity of the injury should it occur) outweighs the utility of the defendant's conduct (a combination of the socia value of the activity in which the defendant was engaged and the advisability of the way in which defendant chose to conduct that activity). Louisiana courts have expressed this concept in varying ways in the appellate decisions. For example:
Negligence is conduct which creates an unreasonable risk of foreseeable harm to others ... The risk of foreseeable harm to others is unreasonable so as to be negligence, if the magnitude of the risk created out-weighs the utility or social value of the conduct creating it; in this respect consideration is given, inter alia, to the probability or extent of the harm to others threatened by the risk. Goff v. Carlino, 181 So.2d 426, 428 (La.App. 3rd Cir. 1966), cert. den.

Under the facts presented, and as to which there is no issue, there is nothing to show that the magnitude of harm threatened to plaintiff outweighs the utility of the bank's conduct. As to the likelihood of injury, the deposition of the bank officer in charge of security for all branches and the affidavits of the employees at the branch in question amply demonstrate that remarkably few similar incidents have occurred. Moreover, it is shown that the affected branch does not have a higher incidence of such problems than any other branch. Thus it must be concluded that the likelihood of injury was very low. As for the severity of the injury if it should occur, there certainly is a risk of some substantial harm. However, during daylight hours (as is the case here) and in close proximity to the actual bank building, the severity of harm is likely to be limited by the presence or presumed presence of other customers and passers-by. The limitations on severity of injury are in fact demonstrated by the depositions and affidavits establishing that the entire incident lasted only a few moments, and help from customers and bank employees alike was quick to arrive.
On the other hand, there can be little doubt that the social value of the activity which the defendant conducts on the premises is extremely high. It is difficult to imagine modern society without the services performed by banking institutions. This is well demonstrated by the fact that Mrs. McKinney was herself voluntarily using the bank's services to change a negotiable instrument into cash. Moreover, the method which defendant chose to carry out its banking business appears to be efficient and reasonably calculated to secure the safety of its patrons. The deposition of the bank officer in charge of security indicates that the absence of an armed guard was not an oversight on the part of the bank, or even a cost-saving device. Rather, it is a *952 conscious decision of the bank aimed at providing the best protection for both the personal and property rights of its patrons (i.e., protection of the person of the patrons on the premises as well as the assets of those not on the premises who have deposited funds in the bank). The bank officer stated in his deposition that "we believe that the presence of an armed person can cause more injury in a robbery than without the person." (p. 42) The fact that very few incidents of this type have occurred at defendant's branch banks suggests that the bank's decision on such matters has proved correct. But in any event, plaintiffs presented no contrary evidence. Indeed, there is no showing that the presence of an armed guard would have prevented the occurrence which forms the basis for this law suit.
Plaintiffs' primary contention is that some sort of special duty ought to be imposed upon banks, since unlike other business entities in society, their "product" is money, thus enhancing the possibility that assailants such as those who attacked Mrs. McKinney will be loitering about the premises. The court fails to see that this argument has any particular merit. In the first place, it is not established that banks are known to be places which are an "easy" place to obtain cash by unlawful means, thereby producing an abnormally high incidence of thefts in the area. In fact, quite the contrary might be true. A great deal of banking takes place in paper transfers without the transfer of any cash. And even though there is certainly substantial cash on hand, it is well protected and the chances of anyone making off with a portion of it are slim indeed. It is likely that a much easier "mark" for the thief is an establishment which does its business mostly by cash and not by checka fast-food outlet, bar or grocery store. The court can almost take judicial notice of the fact that, in this community, more robberies occur in fast-food outlets than in banks. While this fact is not critical to the outcome of this particular case, it suggests that no extra responsibility should be imposed on banks to protect customers.
Given the foregoing analysis, the court is compelled to conclude that the defendant bank has not breached any duty toward Mrs. McKinney, and indeed could not be shown to have done so under these facts. The court deplores the incident and sympathizes with Mrs. McKinney, but cannot hold that Louisiana law requires a bank to be the insurer of its patrons against unpredictable and unexplained assaults near the bank by unknown assailants. The administrative consequences of a contrary decision are substantial and important, and there is no support in prior Louisiana decisions for such a holding.
Neither counsel has directed the court to a similar factual situation in Louisiana involving a bank, nor has the court's research revealed one. The great majority of decisions involving attacks upon a patron by unknown assailants in other settings, however, deny any recovery to the patron. Indubitably, this is why plaintiffs have developed the theory that "bank assaults" should be treated under a different rule from that developed for other stores and businesses. An examination of prior Louisiana decisions will reveal that banks do not differ from other businesses to the extent that they should be subjected to a higher standard of care.
Very recently, in Pennington v. Church's Fried Chicken [393 So.2d 360], No. 13,823 ([La.App.] 1st Cir. 1980), the First Circuit Court of Appeal denied recovery for personal injuries to a patron of a fast-food outlet who was injured when her purse was stolen while she was waiting in line. The court held:
The duty to protect business patrons does not extend to the unforeseeable or unanticipated criminal acts of an independent third person. The owner or management does have a duty to protect patrons when it has knowledge, or can be imputed with knowledge, of the third person's intended conduct.
Similarly, the court in Roberts v. Tiny Tim Thrifty Check, 367 So.2d 64 (La.App. 4th Cir. 1979) denied any recovery against a *953 convenience store proprietor for the death of a patron using the telephone, who was shot during a hold-up attempt. There are numerous other instances of denials of recovery against the operator of a business for injuries inflicted upon a patron by an unexpected assailant. See Hodge v. St. Bernard Chapter No. 36, 338 So.2d 934 (La. App. 4th Cir. 1976); Guidry v. Toups, 351 So.2d 1280 (La.App. 1st Cir. 1977); Rodney v. Mansur, 219 So.2d 305 (La.App. 1st Cir. 1969); Callender v. Wilson, 162 So.2d 203 (La.App. 1st Cir. 1964).
The only exceptions to the general rule of denial of recovery may be grouped into (a) assaults in bars or taverns, where intoxication of patrons is at least expectable and sometimes encouraged; (b) assaults in places where patrons are expected to stay for some length of time, and given some assurance of safety or at least encouraged to relax their precautions; and (c) assaults in which the owner or manager has substantial prior indication of trouble, or even participates in it himself.
(a) Bars. In DeHart v. Travelers Insurance Co., 10 So.2d 597 (La.App.Orl.Cir.1942), plaintiff had entered a bar early in the morning to drink coffee. She was assaulted by another patron, who was intoxicated and had been in the bar for some time. This suggested to the court that plaintiff could show on remand that the proprietor could have foreseen some injury, especially with the aggravating circumstances of intoxication. To the same effect is Borne v. Bourg, 327 So.2d 607 (La.App. 4th Cir. 1976).
(b) Longer stay, or assurance of safety. In Nordmann v. National Hotel Company, 425 F.2d 1103 (5th Cir. 1970), a judgment in favor of a hotel patron against the Jung Hotel was affirmed. An unknown assailant followed plaintiff and her husband to their room, tied up the husband and sexually assaulted and beat plaintiff. Two grounds of negligence had been alleged: inadequate security precautions and failure to respond promptly to calls for help. Both suggest a longer period of stay and a certain reliance by the patrons upon the management that their safety in sleeping rooms will be assured. The recent decision of the First Circuit Court of Appeal in Carline v. Lewis, et al., supra, is in the same vein, since defendants envisioned that plaintiff would have a longer stay on the premises (apartment dweller) and defendants had allegedly warranted that the premises were safe.
(c) Prior indication of trouble, or participation of management. In Matrango [Matranga] v. Travelers Insurance Company, 55 So.2d 633 (La.App.Orl.Cir.1951), an award in favor of a restaurant patron was affirmed when the injury arose out of an altercation between the proprietor and his brother. In Anderson v. Clements, 284 So.2d 341 (La.App. 4th Cir. 1973), a pool hall patron was held entitled to recover against the proprietor because an employee of the pool hall was a participant in the fracas in which the patron was injured. Clear warning of impending trouble or prior incidents was the basis of recovery in DeHart v. Travelers Ins. Co., supra, Miller v. Derusa, 77 So.2d 748 (La.App. 1st Cir. 1955) and Borne v. Bourg, supra.
Even a cursory consideration of these decisions reveals that plaintiffs' alleged cause of action does not fall within the exceptions. Mrs. McKinney would be expected to, and did in fact, spend a very short period of time on the bank's premises probably less time than she would have spent at a fast-food outlet. Her visit was during the daytime hours. She was not physically inside the building itself. There is no suggestion of the involvement of management, or the factor of intoxication. The only conceivable argument which plaintiff could make has been made: that there were prior incidents of this type. Even if that were demonstrated, the trouble was not of the immediate, imminent variety which was the basis of liability in some of the tavern cases. But it is impossible to conclude that there were sufficient prior incidents of this type, even non-imminent, which should have placed defendant upon any particular notice that such an incident was likely to occur at a predictable point in the future.

*954 Conclusion

In light of the stipulation by counsel for all parties and the fact that there is no genuine issue of material fact, and in light of the court's conclusion that defendants are entitled to judgment as a matter of law, it follows that the motion for summary judgment in favor of defendants must be granted.
Judgment will be signed accordingly.
Baton Rouge, Louisiana this 29th day of April, 1981.
 /s/ Charles William Roberts
 JUDGE, 19TH JUDICIAL
 DISTRICT COURT