566 So.2d 1059 (1990)
Marie HENDERSON, Plaintiff-Appellant,
v.
LOUISIANA DOWNS, INC., Defendant-Appellee.
No. 21670-CA.
Court of Appeal of Louisiana, Second Circuit.
August 22, 1990.
Writ Denied November 26, 1990.
*1060 Piper & Associates by Robert E. Piper, Jr., Shreveport, for plaintiff-appellant.
Lunn, Irion, Johnson, Salley & Carlisle by Brian L. Coody, Shreveport, for defendant-appellee.
Before HALL, FRED W. JONES, Jr., and MARVIN, JJ.
HALL, Judge:
Plaintiff, Marie Henderson, appeals the jury verdict and judgment in favor of defendant, Louisiana Downs, Inc., in her personal injury suit. Plaintiff alleges she was injured as a result of another patron dumping her off a bench onto the floor during a dispute over bench seating. Plaintiff asserts that Louisiana Downs was negligent in failing to prevent the incident.
Defendant answered the appeal asserting the trial court erred in assessing it with the court costs, including costs of a jury trial, as it was not responsible for requesting a jury trial, and the trial court's only reason for imposing costs on defendant was that defendant was able to pay the costs.
For reasons expressed below, we affirm the trial court judgment on the issue of liability and reverse the assessment of costs.

FACTS
On August 24, 1985, about two weeks after having knee surgery, plaintiff and her friend, Mrs. Dolzey Epps, went to the races at Louisiana Downs. At approximately 12:30 p.m., plaintiff and her friend went to the third floor of the racing facility. On the third floor of Louisiana Downs are restaurants and betting windows, along with an unreserved seating area for the general public and reserved box seats. There is also an area where patrons may stand and view the races. Seating for the general public is provided by 200 benches which seat three persons each.
When plaintiff arrived on the third floor, she proceeded to the unreserved benches and sat on a bench also occupied by another patron, Leroy Ben Dawson. Mr. Dawson informed plaintiff that the bench was already occupied and the occupants would be right back. According to plaintiff and Mrs. Epps, when plaintiff refused to move Mr. Dawson became upset, cursing Mrs. Henderson. After Mrs. Epps left to find a security guard, Mr. Dawson lifted the opposite end of the bench causing plaintiff to slide or fall to the floor.
Donald M. Moran had been seated at the bench Mr. Dawson was occupying but got up to place bets. Mr. Moran and his friend, Mr. Davidson, who was seated at the next bench, testified that Mr. Dawson was courteous and plaintiff was aggressive and belligerent. They confirmed, however, that after a brief argument, Mr. Dawson lifted the end of the bench causing plaintiff to fall to the floor.
*1061 Security personnel arrived within seconds and helped Mrs. Henderson from the floor. Police were summoned to take Mrs. Henderson's statement since she wanted to file charges against Mr. Dawson. The track physician was summoned to examine Mrs. Henderson for injuries.
This personal injury action followed. After a trial by jury, judgment was rendered absolving Louisiana Downs from liability. On appeal, plaintiff asserts the trial court erred in failing to find her injuries were caused by Louisiana Downs' failure to provide adequate security or seating arrangements, and in failing to grant a mistrial after alleged racially prejudicial remarks were made in closing arguments.

WAS THE SECURITY ADEQUATE?
Appellant argues that the facts established at trial proved that the security measures at Louisiana Downs were inadequate to protect the patrons of the race track. Appellant points to the lack of a formal security plan, to the absence of any measures or procedures to prevent disputes from arising, and to the fact that only two security guards were stationed on the third floor which has a seating capacity of 5,500 persons.
The duty of a business proprietor to provide a reasonably safe place for patrons was discussed in depth in Toups v. Hawkins, 518 So.2d 1077 (La.App. 5th Cir.1987):
"A business proprietor owes to his patrons the duty to provide a reasonably safe place. Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364, 1369 (La. 1984). Although he is not the insurer of his patrons or guests, the proprietor owes them a duty to exercise reasonable care to protect them in both their person and their property. De Hart v. Travelers Insurance Company, 10 So.2d 597, 598 (La.App. Orl. Cir.1942); Borne v. Bourg, 327 So.2d 607, 610 (La.App. 4th Cir.1976); Anderson v. Clements, 284 So.2d 341, 344 (La.App. 4th Cir.1973). This general duty to protect extends to harm from insult, annoyance, and danger. Anderson at 344. Duty itself is a question of law, Harris at 1371, and the proprietor's general duty toward his patrons has been construed to encompass a number of more specific obligations. First, the proprietor must himself refrain from any conduct likely to cause injury to a guest. Anderson at 344, quoting Matranga v. Travelers Insurance Company, 55 So.2d 633, 636 (La.App. Orl. Cir.1951), quoting, in turn, the decision of the district court. He must maintain his premises free from unreasonable risks of harm or warn patrons of known dangers thereon. Miguez v. Urban Dev., Inc., 451 So.2d 614, 617 (La.App. 5th Cir.1984), writ denied 452 So.2d 1176 (La.1984); see also Hodge v. St. Bernard Chapter No. 36, Home, Inc., 338 So.2d 934, 936 (La. App. 4th Cir.1976). Beyond these measures, the proprietor must exercise reasonable care to protect his guests from harm at the hands of an employee, another guest, or a third party. Anderson at 344; Pennington v. Church's Fried Chicken, Inc., 393 So.2d 360, 362 (La. App. 1st Cir.1980), citing Cooper v. Ruffino, 172 So.2d 717 (La.App. 4th Cir. 1965). Reasonable care in the context of the threat of harm presented by the enumerated parties has been interpreted, in turn, to embrace certain subduties. First, should a disturbance or a likely disturbance manifest itself, the proprietor, if time allows, must attempt to prevent injury to his patrons by calling the police. Anderson at 344; Borne at 610, quoting Anderson. Second, should the business owner or manager become aware of impending or possibly impending danger, he must warn his patrons of the potential danger. Anderson at 345. As to criminal acts performed by third parties specifically, there is generally, no duty to protect others from the criminal acts of those parties. Harris at 1371, citing Restatement (Second) of Torts, § 314; W. Prosser, Law of Torts, § 33, at pp. 173-74 (4th ed. 1971). That is, the general duty of reasonable care does not extend to protecting patrons from the unanticipated criminal acts of third parties. Pennington at 362. Only when the proprietor has knowledge of, or can be imputed with knowledge of, the third *1062 parties intended conduct is the duty to protect invoked, triggering the subduties discussed above. Pennington at 362; Miquez [sic] at 617; Crochet v. Hosp. Serv. Dist. No. 1 of Terrebonne Parish, 476 So.2d 516, 517 (La.App. 1st Cir.1985), writ denied 478 So.2d 1235 (La.1985). Finally, notwithstanding the general absence of any duty to protect against third party criminal acts, an obligation to protect, once voluntarily assumed by the business owner or manager, must be performed with due care. Harris at 1369. Specifically, `a business which undertakes to hire a security guard to protect itself and its patrons is liable for physical harm which occurs because of negligence on the part of that guard.' Harris at 1369. Whether violence that results from the breach of an assumed duty of protection was reasonably foreseeable and is a cause-in-fact of an injury is a factual inquiry. Harris at 1369."
See also Foster v. Colonel Sanders Kentucky Fried Chicken, 526 So.2d 252 (La. App. 2d Cir.1988), writ denied 531 So.2d 483 (La.1988); Tabary v. D.H. Holmes Company, Ltd., 542 So.2d 526 (La.App. 5th Cir.1989).
Plaintiff asserts that three incidents of altercations over seating in the past indicate a necessity of having more than two security guards for the third floor of the Downs. We disagree. From 1975 to 1985, there were only three reported incidents of disputes over seating. Only one involved violence. A security supervisor testified he had observed about 20 arguments over a period of several years. During the 10-year period, about 11,000,000 patrons had attended Louisiana Downs.
Two of the track's 15 security guards were assigned to the third floor. There were 11 usherettes on the floor assigned to assist in seating. All security personnel were equipped with radios and there were closed circuit T.V. monitors on the floor. In Foster v. Colonel Sanders Kentucky Fried Chicken, supra, one robbery in three years did not give rise to a duty to provide security against robberies. In Tabary v. D.H. Holmes Company, Ltd., supra, a store was not found to have a duty to prevent a man from running recklessly through shopping aisles. In Sutter v. Audubon Park Commission, 533 So.2d 1226 (La.App. 4th Cir.1988), writ denied 538 So.2d 597 (La.1989), there was no duty to provide special protection in a restroom in the park in order to prevent shootings.
Although Louisiana Downs assumed a duty to protect patrons by the existence of a security staff, the low incidence of bench seating disputes shows the likelihood of an assault occurring was minimal. Significant security was provided and there is no indication that additional security was required or would have prevented this incident from happening. Several witnesses, including plaintiff, testified that the events occurred very rapidly. There was not time to take preventive steps prior to Dawson's actions, which were unanticipated. Louisiana Downs did not breach a duty to plaintiff and nothing defendant did or failed to do caused the battery inflicted upon her by another patron.

WAS THE SEATING POLICY ADEQUATE?
Plaintiff also argues that the seating provided, along with the lack of a seating policy, made the premises unsafe for patrons. Plaintiff's security expert testified that taking such steps as posting signs, handing out brochures setting forth the seating policy, or providing reserved seating would have increased security and that the cost would be minimal. Defendant's witnesses testified that the seating policy was first come, first served with no saving of seats, with the possible exception of husband or wife saving a seat for the other. They further testified to the presence of several usherettes to direct patrons to available seating and assist with problems. They further testified that non-reserved seating is needed in a business establishment where many patrons do not stay for the full day of racing.
The seating arrangements provided by Louisiana Downs were adequate to provide reasonably safe seating commensurate with the nature of the facility. There was *1063 nothing about the seating that was unusual for a public entertainment facility or that presented any unreasonable danger of harm to patrons. There is no reason to believe that the suggestions made by plaintiff's expert would have made the premises safer or prevented this incident.

MOTION FOR MISTRIAL
Plaintiff, who is black, as was Dawson, asserts she was denied a fair trial due to prejudicial remarks aimed at her race made by defendant's counsel during closing arguments. The remarks referred to are:
"... What do we know about Mr. Dawson? What made Mr. Dawson so mad to want to dump this lady on the floor? She says she is just talking to him telling him you can't reserve seats. Does that make sense? Why this man that was so nice, a black man, was so nice to this white coupletwo white couples and asked them, you can sit here. He was polite to them, enough for them to say that despite the fact that he dumped this lady on the floor, they said they thought he was a nice man. Now what would turn this nice man into someone that would dump somebody on the floor? He didn't curse at Mrs. Epps. Mrs. Epps came up and sat down on that same bench. Now why do you supposewhy do you suppose he waited until Mrs. Epps got up before he dumped her on the floor, Mrs. Henderson? Why do you suppose that he didn't curse at Mrs. Epps? Was it because of the bench, the saving of the bench, was that really why he dumped her on the floor? No, that wasn't the reason why it led to an assault. I can tell you why it led to an assault. It was the reaction of Mrs. Henderson. Her attitude, that's what led to the assault. Wasn't the fact that there was this bench saving dispute going on. Mrs. Epps sat down on that same bench. He didn't dump her on the floor, he didn't cuss her. Seemed like there is a little bit of a flaw in the plaintiff's case there, isn't it? ... Mrs. Henderson places herself in a situation and acts rude and indignant and now she wants money in consequences of what happened. Now I'm not saying that she deserved what she got. I certainly don't condone Mr. Dawson's actions."
And further:
"... But does Louisiana Downs deserve to be sued by something that Mr. Dawson did? Did Mrs. Henderson give Louisiana Downs a chance to assist her, to protect her? Uh uh, she chose to argue with this person over the bench. They said he was trying to help save for an older white couple. Didn't have to do that. Just trying to be nice."
Plaintiff's counsel interposed objections to these remarks which were overruled and at the conclusion of closing arguments moved for a mistrial which was denied.
It is argued that defense counsel's remarks were designed to appeal to the prejudices of the 11 white, one black jury by portraying Dawson as being a nice person because he was friendly to white persons, thereby tending to prejudice the jury against plaintiff.
The parties are entitled to a fair trial uninfluenced by appeals to passion or prejudice. Bienvenu v. State Farm Mutual Auto Insurance, 545 So.2d 581 (La.App. 5th Cir.1989); Ogletree v. Willis-Knighton Memorial Hospital, 530 So.2d 1175 (La. App. 2d Cir.1988), writ denied 532 So.2d 133 (La.1988). However, counsel has great latitude in argument before a jury, subject to the regulation and control of the trial court, whose duty it is to make certain the argument stays within proper bounds. Temple v. Liberty Mutual Insurance Company, 330 So.2d 891 (La.1976); Starks v. Kelly, 435 So.2d 552 (La.App. 1st Cir. 1983). Unless the contrary is clearly shown, rulings on allegedly prejudicial improper argument or conduct of counsel are presumed to be within the trial court's great discretion. Wisner v. Illinois Central Gulf Railroad, 537 So.2d 740 (La.App. 1st Cir.1988), writ denied 540 So.2d 342 (La.1989). The rulings of the trial court will not be reversed absent an abuse of such discretion. Benoit v. Firemen's Fund Insurance Company, 361 So.2d 1332 (La.App. 3d Cir.1978).
The reference to the black man being nice to the white couple could possibly be *1064 interpreted as intended to appeal to racial bias and, viewed in that light, would be entirely inappropriate. During argument on the motion for a mistrial, counsel for defendant, sincerely it would appear, disclaimed any such intent. In any event, who started the confrontation between plaintiff and Mr. Dawson is entirely insignificant as to the liability of Louisiana Downs and the remarks cannot be considered as being sufficiently prejudicial to have influenced the jury's unanimous verdict.
In this case, the remarks made by defense counsel were not so inflammatory as to prevent a fair and impartial verdict. After plaintiff's objection, defense counsel reminded the jury that arguments are not evidence, and further appealed to the jury to avoid a decision based on passion. The jury was also instructed by the trial court that arguments of counsel are not evidence to be considered in rendering its verdict. The evidence strongly supported the jury's finding of no fault on the part of defendant. Accordingly, in view of the nature and context of the statements themselves, the cautionary instruction by the trial court, and the evidence presented, we do not find sufficient prejudice to warrant a mistrial or to give less than full weight to the jury's verdict on appellate review. Wisner, supra; Callahan v. Town of Bunkie, 287 So.2d 629 (La.App. 3d Cir. 1973), writ denied 290 So.2d 905 (La.1974).

ASSESSMENT OF COSTS
Defendant asserts the trial court erred in assessing all costs of the trial to it. Filed into the record was a letter from the trial court to counsel stating:
"The problem is that the judgment taxes the costs of court to the plaintiff, who is qualified as a pauper. Under the provisions of Louisiana Revised Statute 13:349(B)(2)(e) any deficient (sic) in the court costs must be paid from the judicial expense fund, if one exists. I see no good reason in a case of this nature why the judicial expense fund should be required to support the right of the parties to a trial by jury. Therefore, as I had previously indicated to Mr. Coody, I am exercising the discretion given to me as trial judge to tax the costs in this case to the defendant."
LSA-C.C.P. Art. 1920 confers discretion on the trial court in the taxing of costs. The trial court's exercise of discretion will not be reversed absent an abuse of that discretion. Succession of Batton v. Prince, 384 So.2d 506 (La.App. 2d Cir. 1980). When a prevailing party is taxed with costs of litigation, it is usually because that party in some way incurred additional costs pointlessly or engaged in other conduct which justifies an assessment of costs against that litigant. Johnson v. Hendricks Manufacturing Company, Inc., 475 So.2d 103 (La.App. 2d Cir.1985); Bowman v. New Orleans Public Service, Inc., 410 So.2d 270 (La.App. 4th Cir.1982); Courtney v. Winn-Dixie Louisiana, Inc., 447 So.2d 504 (La.App. 5th Cir.1984), writ denied 449 So.2d 1359 (La.1984). Equity does not translate to: "He pays who best can afford it." Busalacchi v. Vogle, 429 So.2d 217 (La.App. 4th Cir.1983). See also Walton v. New Orleans Public Service, Inc., 413 So.2d 527 (La.App. 4th Cir.1982). There are no equitable considerations here to justify the taxing of court costs against Louisiana Downs, and the trial court abused its discretion in doing so.
Accordingly, the judgment appealed from is amended to assess costs, including the cost of appeal, against the plaintiff, Marie Henderson, and, as amended, is affirmed.
AMENDED AND AFFIRMED.