482 So.2d 890 (1986)
Ramonia Leigh BALLEW, Appellee,
v.
The SOUTHLAND CORPORATION d/b/a 7-11 Food Stores and Kemper Insurance Company, In Solido, Appellants.
No. 17468-CA.
Court of Appeal of Louisiana, Second Circuit.
January 22, 1986.
*891 C. William Gerhardt & Associates by C. William Gerhardt, Shreveport, for appellee.
Bodenheimer, Jones, Klotz & Simmons by G.M. Bodenheimer, Shreveport, for appellants.
Before HALL, FRED W. JONES, Jr. and NORRIS, JJ.
NORRIS, Judge.
Plaintiff, Ramonia Ballew, sued the Southland Corporation and its insurer, Kemper Insurance Company, for damages she sustained when a third person dragged her from inside one of Southland's 7-11 Stores and forcibly raped her. A jury trial resulted in a verdict in favor of plaintiff for $40,000. Defendants appealed contesting the jury's finding of liability. Plaintiff answered the appeal seeking an increase in the amount of damages. We affirm.

FACTS
On the evening of February 22, 1983, at approximately 10:00 p.m., Ramonia Ballew drove to the 7-11 Store on the corner of Hollywood and Prentice Avenues in Shreveport to purchase several items. According to the plaintiff, upon pulling into the parking *892 lot, she noticed a large black man standing inside at the front of the store. The man, Aubrey Mitchell, was dressed only in a pair of yellow gym shorts. Plaintiff testified she was afraid to get out of her car at this point, so she waited until she thought the man had left. However, once she exited her car to enter the store, Mitchell suddenly reappeared and followed her into the store in close proximity. Once in the store, Mitchell asked plaintiff to buy him a coke. She told him she did not have enough money to buy him a coke and then proceeded on to the ice cream cooler. According to the evidence, Mitchell had been in and out of the store dressed in the same manner for approximately fifteen to thirty minutes prior to plaintiff's arrival, asking other customers for money and requesting to use the store's private telephone.
While Mrs. Ballew was still in the store, Mitchell obtained a coke, opened it, and told the clerk that plaintiff was going to pay for it. He then exited the store and proceeded to drink the coke in front of the store and according to plaintiff propped his foot on her car.
Mrs. Ballew then walked up to the check out counter and told the clerk she was afraid of Mitchell. The clerk rang up plaintiff's purchase and while the two were standing there talking, Mitchell proceeded to come back inside the store. As he entered, the clerk confronted him and told him that since he did not have any money he should leave the store. Mitchell then grabbed plaintiff by the hair and throat, dragged her outside, around to the back of the 7-11 Store and forcibly raped her. The clerk did not call the police until Mitchell had grabbed Mrs. Ballew and was dragging her out of the store. Once called, the evidence reveals the police arrived within three minutes, apprehending Mitchell in the act of rape.
Mrs. Ballew subsequently filed this suit against the Southland Corporation and its insurer alleging that the Southland Corporation (a) failed to provide adequate security, (b) violated various standards of safety to customers in convenience stores, (c) violated various Louisiana state statutes and Shreveport city ordinances, and (d) that its employee failed to take the appropriate security precautions.
After a lengthy jury trial, the defendants were held liable for Mrs. Ballew's damages and a judgment of $40,000 was entered in her favor.

DISCUSSION
Appellants simply contend that the jury erred in concluding that the Southland Corporation or its employee were at fault in causing the plaintiff's damages. Appellants make two basic arguments. First, they urge that the evidence shows that the Southland Corporation took adequate security measures to meet its duty of reasonable care for the safety of its customers. Secondly, they contend its employee, Judith Longoria, was not negligent in failing to summon the police prior to the criminal attack upon the plaintiff. According to the appellants, plaintiff failed to prove the elements of a negligence action.
Appellee, on the other hand, contends the jury was not clearly wrong in finding liability, but asserts that they should have awarded a higher verdict.

LIABILITY
In order to prevail in a negligence action, the plaintiff must prove the existence of a duty, the breach of that duty, and damages caused as a result of the breach. Additionally, the plaintiff must show that the harm suffered could have been foreseeably associated with the breach of the duty, and that the harm suffered was of the type that the duty was designed to prevent. Stevens v. State, Through Department of Transportation, 440 So.2d 920 (La.App.2d Cir.1983). For the purposes of analysis, this formula can be broken down into four different, yet interrelated elements:
1) Whether the conduct of which plaintiff complains was a cause-in-fact of the harm;
(2) Whether there existed a duty of care to protect against the risk involved;

*893 (3) Whether the defendant breached that duty; and,
(4) Actual damages.
Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984).
The first element, cause-in-fact, is simply the causal relationship between the plaintiff's harm and the defendant's alleged negligent conduct. The plaintiff must show that he or she would not have suffered the injuries complained of but for the defendant's conduct. Wattigny v. Lambert, 408 So.2d 1126 (La.App.3d Cir.1981). Another formulation of this standard is that the plaintiff must show that the defendant's conduct was a "substantial factor" in bringing about the harm. Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962).
The instant case points up a problem similar to the one confronted in Harris, supra. It is not entirely clear from the record what act or omission the jury found to be the cause-in-fact. Harris, supra at 1370. However, this problem need not detain us long. As described below, the defendant and its employee had a duty to act at the time it knew or should have known of the potential danger presented by the third party. The failure of defendant's employee to act by timely notifying the police and locking down the premises was clearly a "substantial factor" in bringing about the plaintiff's harm. Thus, the jury was certainly not manifestly erroneous in concluding that the defendant's failure to act was a cause-in-fact of plaintiff's harm.
Finding that defendant's conduct was a cause-in-fact of plaintiff's injuries, however, does not establish liability. The next determination that must be made is whether defendant owed a duty to the plaintiff. A business establishment such as the Southland Corporation owes a duty to its patrons to exercise reasonable care to protect them from injury.[1] This duty does not extend to unforeseeable or unanticipated criminal acts by independent third persons. Only when the owner, management or employees of a business have or should have knowledge of a third person's intended injurious conduct that is about to occur and which is within the power of the owner, management or employees to protect against, does the duty arise. Banks v. Hyatt Corporation, 722 F.2d 214 (5 Cir. 1984); Rodriguez v. New Orleans Public Service, Inc., 400 So.2d 884 (La.1981); Davenport v. Nixon, 434 So.2d 1203 (La. App.1st Cir.1983). When the independent, intentional, tortious or criminal acts of third persons constitute the unreasonable risk, the duty can be discharged by summoning the police at the time the proprietor knows or should reasonably anticipate that the third person poses a probable danger. Rodriguez v. New Orleans Public Service, Inc., supra; Guidry v. Toups, 351 So.2d 1280 (La.App.1st Cir.1977), writ denied 353 So.2d 1036 (La.1978); Anderson v. Clements, 284 So.2d 341 (La.App.4th Cir.1973). In Borne v. Bourg, 327 So.2d 607, 611 (La.App.4th Cir.1976), a restaurant was held liable for the failure of its employee to call the police when the employee knew a potentially dangerous situation was developing between two customers, one of whom was obviously drunk and was behaving erratically. From the foregoing caselaw, it is clear that the Southland Corporation's employee had a duty to act when she knew or should have known that Mitchell posed a potential danger to the plaintiff.
Our next inquiry is whether Southland breached its duty. Southland's employee in charge on the night of the incident, Judith Longoria, was admittedly aware of the following facts prior to Mitchell's dragging plaintiff from the store. Mitchell was dressed in a most bizarre fashion for a chilly February night, i.e., clad only in yellow gym shorts. He had been loitering *894 around the store for some fifteen to thirty minutes prior to plaintiff's arrival. He first came in about 9:45 p.m. and asked Longoria for a dime. She told him she did not have one. He then asked a customer for a dime, received it and walked out. He came back in almost immediately and asked the same customer for another dime and was refused. He then walked in the game room and came out flashing two nickels between his fingers and walked out the door again. Several minutes later, he reentered the store and asked that Ms. Longoria call his sister in Greenwood on the store's private telephone, although there were pay phones outside. After Ms. Longoria told him that she could not make a long distance call, he left. When plaintiff entered the store some fifteen minutes later, Ms. Longoria noticed Mitchell "got right in behind her." Ms. Longoria knew Mitchell was not with plaintiff. Mitchell got a coke, held it over his head, "popped the top," and stated "you did say you were going to buy me a coke, didn't you." Ms. Longoria testified she knew plaintiff had no intention of buying Mitchell a coke and that when this happened plaintiff looked shocked and surprised. Mitchell went outside to the front of the store and began drinking the coke. Plaintiff testified that he propped his foot up on her car.
The record further reveals that in 1980 an armed robbery had occurred at the store in question and the employee was injured. No criminal activity occurred in 1981. In 1982 there was a theft, an armed robbery with no injuries and an armed robbery in which a Southland employee was killed. Ms. Longoria was aware of the 1982 occurrences. She, her co-workers and supervisor all testified that Southland had instructed its employees about its admitted policy of calling the police immediately when a suspicious person came around one of its stores. Mr. Hammonds, the store's supervisor, admitted that the police should be called when someone hangs around one of the stores for fifteen to thirty minutes bothering customers for money. Plaintiff's security expert, James D. White, testified that the peak crime time for convenience stores is between 9 and 11 p.m. He further testified that violent crimes are often committed by persons who loiter around a convenience store making excuses for being there without making purchases. He testified that the clerk should ask if he can help such a person; but if he continues to hang around the police should be called immediately. He also testified that if such persons are outside the premises the store should be "locked down" and the police immediately called.
Appellants argue that the clerk on duty was not negligent in failing to identify Mitchell as a "suspicious character" and in failing to call the police prior to the actual attack on plaintiff. They contend Mitchell's unusual dress, suspicious actions and manner were not sufficient cause to lead a reasonable person to suspect impending criminal behavior. We concede the issue is close, but each case must be judged upon its own particular facts and circumstances. Given the facts known to Ms. Longoria prior to the attack on plaintiff, we cannot say that the jury in this case was manifestly erroneous in concluding that Southland's employee breached her duty of reasonable care to the plaintiff. The jury could have reasonably concluded that because of Mitchell's bizarre dress, suspicious actions and erratic behavior, the clerk should have realized that a potentially dangerous situation was developing. Ms. Longoria should have called the police when she saw Mitchell entering the store for the fourth time and following so unusually close on the heels of the plaintiff. This is especially true since she admittedly knew that Mitchell was not with the plaintiff. Certainly, at the very latest, she should have called the police and locked down the premises when Mitchell walked out of the store with a pilfered coke. The failure to do so clearly amounts to a breach of the duty to exercise reasonable care to protect plaintiff from injury.
Finally, we must inquire whether the risk and harm caused were within the scope of protection afforded by the duty. *895 Certainly, Southland was aware of the risk of violent crimes that its employees and customers faced in its stores. In fact, it had developed a set of three training films entitled "Operation Alert" that dealt with the subjects of armed robbery, rape awareness and violence avoidance. These films were shown to each new employee during his initial training period. These films were followed up by refresher courses, called security seminars, on a periodic basis. Admittedly, Ms. Longoria may not have known precisely what criminal activity Mitchell intended but she should have, at the very least, realized that Mitchell was a potentially dangerous person and posed an unreasonable risk of harm. The threat of physical violence against a female customer can be easily associated with Mitchell's bizarre dress and unusual conduct. Thus, the risk of harm that befell this plaintiff was within the scope of the defendant's duty and the jury was not manifestly erroneous in concluding that Southland, through its employee, breached its duty of reasonable care to plaintiff.

DAMAGES
In regards to damages, appellee argues that the trial court erred: (1) in refusing to allow Miss Nancy Bushnell to testify as an expert in the field of rape counseling, and (2) in refusing to permit Miss Bushnell to testify as to specific facts within her actual knowledge even though the court ruled that she was not an expert; and (3) in not permitting appellee's proffered security expert to give opinion testimony about the adequacy of the security measures taken at this particular 7-11 Store. Appellee contends that these alleged errors constitute an abuse of discretion. Therefore, appellee contends, we are not limited to raising the jury's award to the lowest reasonable point, as in an ordinary quantum review case. Rather, appellee argues that under the "manifest error rule" we are permitted to render any judgment which is just, legal and proper upon the record in accordance with LSA-C.C.P. art. 2164.
In response, appellants simply contend that the trial court did not commit manifest error in regards to his rulings on the proffered expert testimony. Thus, the ordinary quantum review standard announced in Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); and Reck v. Stevens, 373 So.2d 498 (La.1979) is the appropriate standard and that under this standard the jury did not abuse its discretion in awarding the plaintiff $40,000.
The qualification of a witness as an expert is within the sound discretion of the trial court and will not be reversed absent a finding that it is clearly erroneous as a matter of law. Friday's Plumbing & Heating Co. v. Byers, 415 So.2d 256, 259 (La.App.2d Cir.1982); and Tidmore v. Godchaux's Inc., 444 So.2d 160 (La.App.1st Cir. 1983).
First, in regard to Miss Bushnell, the record reveals that she had a Bachelor's Degree in psychology. However, at the time of trial she had not yet completed her Master's degree. She had worked in the field of rape counseling for approximately two years and had taken an 18 month professional training course in therapeutic treatment under Dr. Paul Ware. However, she had never qualified as an expert in any court. Based upon these facts, the trial court held that Miss Bushnell's lack of a Master's degree and her limited years of counseling experience were insufficient to qualify her as an expert in rape counseling. Considering the trial court's wide discretion, we do not find the trial court committed manifest error in refusing to admit Miss Bushnell as an expert in rape counseling. While years of experience may sometimes qualify one as an expert in a particular field, this is not always the case. See, Audubon Insurance Company v. State Farm Mutual Insurance Company, 425 So.2d 907 (La.App.4th Cir. 1983); Burrell v. Kirkpatrick, 410 So.2d 1255 (La.App.3d Cir.1982).
Appellee's second contention that the trial court erred in refusing to allow Miss Bushnell to testify as to specific facts within her actual knowledge is equally without *896 merit. Counsel for appellee contends Miss Bushnell was not allowed to elicit testimony concerning the number of counseling sessions that the plaintiff attended. However, the record does not support this contention. The record reveals that counsel for appellee never made any attempt to elicit the number of counseling sessions in the presence of the judge and jury. Consequently, the judge never ruled on the admissibility of this specific testimony. The trial court only ruled on Miss Bushnell's qualification as an expert. Since the record fails to reveal any attempt by counsel to elicit this testimony, we do not consider it to be an issue on appeal.
Appellee's third contention is based upon the trial court's refusal to allow appellee's security expert to testify as to the adequacy of the security measures taken by the Southland Corporation at this particular 7-11 Store. Since we have already determined that the relevant legal inquiry is whether the store, through its employee, knew or should have known of the third person's criminal intention, we need not address this alleged error. Even if the trial court did err in disallowing the expert's testimony as to the security provided at this particular 7-11, such testimony is not essential to the finding of either liability or damages in this case. Thus, the trial court's error, if any, in disallowing this testimony was harmless.
Moreover, appellee's reliance on the manifest error rule is unfounded in this case. The "manifest error rule" which permits an appellate court to award whatever damages are just and proper only applies where the trier of fact initially rejects the plaintiff's demands and the record is complete with regard to damages. Jones v. P.K. Smith Chevrolet-Olds, Inc., 444 So.2d 1372 (La.App.2d Cir.1984). Here, the fact finder accepted plaintiff's demand for damages. Thus, the manifest error rule is inapplicable. Finally, based upon an ordinary quantum review, we see no abuse of discretion. Accordingly, the trial court's judgment is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] Innkeepers, as opposed to ordinary businesses, owe their guests a duty higher than ordinary care. An ordinary business may only be held liable for a third-party criminal assault if it has actual or imputed knowledge of the impending assault. An innkeeper, however, may be held liable for failure to take reasonable security measures to deter criminal activity. Banks, supra at 220, 221.