668 So.2d 436 (1996)
Dawn Marie ROBINSON,
v.
Linsanuddin YOUSUF, Linsanuddin Yousuf d/b/a Yousuf's Chevron, Jenifer Hall, Chevron USA, Inc., Chevron U.S.A. Products Company, Chevron Food Mart and CNA Insurance Company.
No. 95-CA-1476.
Court of Appeal of Louisiana, Fourth Circuit.
January 19, 1996.
Writ Denied March 29, 1996.
*438 Alan P. Jacobus, Jacobus & Rando, and Thomas L. Smith, Anthony A. Dingleman, New Orleans, for Dawn M. Robinson.
Al M. Thompson, Jr., Hulse, Nelson & Wanek, New Orleans, for Linsanuddin Yousuf, Linsanuddin Yousuf d/b/a Yousuf's Chevron, Jennifer Hall, Chevron U.S.A., Inc., Chevron U.S.A. Products Company, Chevron Food Mart and CNA Insurance Company.
Before BARRY, KLEES and WALTZER, JJ.
WALTZER, Judge.

STATEMENT OF THE CASE
Dawn Marie Robinson sued the owners and operators of Yousuf's Chevron gas station for damages arising out of injuries she sustained as a victim of a drive-by shooting at or near the station. Defendants answered and filed a motion for summary judgment[1], which the trial court granted on 23 February 1995. From that judgment, Robinson appeals. We affirm.

STATEMENT OF FACTS
Sometime after midnight on 18 December 1992, Robinson drove to Yousuf's Chevron at 3400 Franklin Avenue in New Orleans to get gas and parked near the pumps closest to the building on the street side of the pumps. She was in line to pay for the gas, behind Bruce Hurley, when she, Hurley and the cashier, Jennifer Hall, heard several cracking sounds, which they thought might have been firecrackers, in the direction of the Interstate Highway. Robinson described the noise as coming from a distance, not right behind her, and "like an echo." Neither Robinson nor Hurley remarked about the noise to Hall. Hurley purchased some milk, Robinson paid for her gas, and each returned to their respective vehicles. A greenish blue pickup truck drove to the station as Robinson was walking back to her car. A man exited the truck from the passenger side and ran past Robinson asking that someone call the police and an ambulance because the people in the truck had been shot. Hall testified on deposition that she called 9-1-1 immediately. Hurley testified that he ran to the pay phone located on the outside of the station building to call 9-1-1 for help. As he hung up the phone and approached the truck, he heard gun fire and ran, first to hide behind an ice machine and then to hide behind his truck. He testified that the shooters simply sprayed the area, apparently not caring who was hit.
At no time after he heard the crackling noise coming from the direction of the Interstate did he ask the cashier to allow him to enter the station building. He testified that he heard the noise, thought that was all there was to it and thought that there was no reason to ask to come into the station or to take cover or anything else. He did not hear Robinson ask to come inside the building.
Robinson testified that while Hurley called the police, she walked to the truck and saw one victim who was conscious and one who was unconscious. She tried to revive the unconscious victim, ascertained that she was alive, and felt for a pulse. She testified that at that time there was nothing else she could do. Robinson walked to the cashier's office, but did not see Hall. As Robinson stood by the cashier's window, she was shot by the occupants of another truck. She crawled to her car, rolled the window down, and drove to Charity Hospital where she was treated.
Jennifer Hall testified that she was employed at the time of the incident as night clerk for the Chevron gas station. She testified that she had called the police no more than three to five times since 1990: when she saw someone she thought was suspicious, when a person was kicking a broken air machine, and when irate customers kicked her drawer or cursed her. She said that in each case as soon as the malefactors saw her call the police, they left the premises. She said she never felt the need for a security guard because she did not feel the station was a dangerous place. She testified that she had never requested a security guard, did not have a gun at her disposal and had never been in a situation when a crime was committed on the premises.
Hall testified that she went to get Hurley's milk, and Robinson was walking to her car to *439 pump her gas when she heard several loud pops, which she thought were firecrackers, from the direction of the Interstate. As she handed Hurley his milk, a truck came into the station, someone jumped out of the truck and banged on the cashier's window asking her to call the police because someone had been shot. At that time, she did not feel that the customers were in danger because they were outside the station building. The victims pointed to the Interstate when they said they had been shot. The victims came into the station, but Hall said she did not know that someone was following them. She said she could not foresee the shooters coming back to do any more shooting. She picked up the telephone, called 9-1-1, reported the incident and hung up. She saw someone lying immobile in the truck and called 9-1-1 again. Hurley told her that he, too, had called 9-1-1 twice. She ran to the door intending to go out to help the woman who was lying in the middle seat of the truck. Before the door could close behind her, she heard wild shooting, and dove to the ground. She estimated the time elapsed from the first firecracker-like noise she heard to the time she opened the door to the building and the shooting began as 45 seconds to two minutes.

STANDARD OF REVIEW
Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Schroeder v. Board of Sup'rs of Louisiana State University, 591 So.2d 342, 345 (La.1991). A motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that the mover is entitled to judgment as a matter of law. La.C.C.P. art. 966; Schroeder, supra. Because the mover has the burden of establishing that no material factual issue exists, inferences to be drawn from the underlying facts contained in the materials before the court must be viewed in the light most favorable to the party opposing the motion. Id. The party who defends against a motion for summary judgment must receive the benefit of the doubt when his assertions conflict with those of the movant. Id.
Robinson contends that there exist issues of material fact arising from a discrepancy in the testimony concerning the elapsed time between the first shots and the appearance of the shooters at the station[2], and concerning whether Ms. Hall remained at the cashier's counter during that interval. A fact is material if it is essential to plaintiff's cause of action under the applicable theory of recovery and without which plaintiff could not prevail. Generally, material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute. Prado v. Sloman Neptun Schiffahrts, A.G., 611 So.2d 691 (La.App. 4th Cir.1992), writ not considered, 613 So.2d 986 (La.1993). Robinson's "issues of material fact" address Hall's alleged breach of duty and are material only if defendants owed her a duty, as a matter of law.
The trial court determined that, as a matter of law, defendants owed no duty to protect Robinson from the particular criminal activity that resulted in her injury. The judgment provides:
The duty of a shopkeeper to provide security to his customers presupposes a dangerous location. Plaintiff has not alleged, nor proved, that Yousuf's Chevron was such a dangerous location.
Here, a violent situation developed off of the Chevron premises, and it was completely coincidental that the victims sought refuge at the gas station. That the gunmen followed the victims to the station and injured plaintiff had nothing to do with the safety of the location. A shopkeeper can not be held to have anticipated nor protected against such a fortuitous event.
We find that the trial court's judgment is correct, not only, as noted in the judgment, because Robinson failed to provide *440 any evidence of prior crimes at the Chevron station, but also because Robinson offered no evidence that the incident constituted an impending assault as to which the shopowner and its employee had a duty to protect her.
The standard negligence analysis we employ in determining whether to impose liability under La.C.C. art. 2315 is the duty/risk analysis, which consists of the following four-prong inquiry:
I. Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, i.e. was it a cause-in-fact of the harm which occurred?
II. Did the defendant(s) owe a duty to the plaintiff?
III. Was the duty breached?
IV. Was the risk, and harm caused, within the scope of protection afforded by the duty breached?"

Mathieu v. Imperial Toy Corp., 94-0952 (La. 11/30/94) 646 So.2d 318, 321-322.
The question of whether a duty exists in a particular set of circumstances is a question of law for the court to decide. Mathieu, 646 So.2d at 322; Mundy v. Department of Health and Human Resources, 620 So.2d 811, 813 (La.1993), citing Faucheaux v. Terrebonne Consol. Government, 615 So.2d 289, 292 (La.1993); Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364, 1371 (La.1984). Thus, the duty issue may be appropriate for resolution by summary judgment. La.C.C.P. art. 966(B).
In general, the owner or operator of a facility has the duty of exercising reasonable care for the safety of persons on his premises and the duty of not exposing such persons to unreasonable risks of injury or harm. Mundy, supra, citing St. Hill v. Tabor, 542 So.2d 499, 502 (La.1989); Harris, 455 So.2d at 1369; Walker v. Union Oil Mill, Inc., 369 So.2d 1043, 1047 (La.1979). However, this duty does not extend to unforeseeable or unanticipated criminal acts by third persons. Mundy, supra; Harris, 455 So.2d at 1371.
The Louisiana Supreme Court in Mundy adopted Restatement (Second) of Torts Sec. 344 comment (f) (1965):
If the place or character of his [the proprietor's] business, or his past experience, is such that he should reasonably anticipate careless or criminal conduct on the part of third persons, either generally or at some particular time, he may be under a duty to take precautions against it, and to provide a reasonably sufficient number of servants to afford a reasonable protection. Mundy, 620 So.2d at 814.
The Mundy court found that evidence of a single prior criminal incident at the bank of elevators on which the plaintiff was injured was insufficient to conclude that the security measures undertaken by the defendant were unreasonable or inadequate. In the instant case, there was no evidence of even a single prior criminal act at or in the vicinity of the station.
Robinson relies on Romaguera v. Piccadilly Cafeterias, Inc., 94-374 (La.App. 5 Cir. 12/14/94), 648 So.2d 1000, writs denied, 95-0093 (La. 3/10/95), 650 So.2d 1183 and 95-0124 (La. 3/10/95), 650 So.2d 1184. This reliance is misplaced. Romaguera was injured as she was exiting her car in the Piccadilly parking lot, when a man emerged from a truck and shot her. Romaguera produced evidence of an attempted armed robbery in the restaurant, subsequent to which management posted a security guard near the cash register. Romaguera presented expert evidence, uncontradicted by defendant, of the insufficiency of Piccadilly's security measures, including crime statistics for the restaurant's immediate vicinity that demonstrated to the court's satisfaction the foreseeability of the attack on Romaguera.
The only evidence of record in the instant case concerning the foreseeability of the drive-by shooting in the course of which Robinson was injured is the testimony of Jenifer Hall, that no criminal activity had occurred, and that the three to five calls she had made to police were of the nuisance variety, and the offending parties left when they saw Hall use the telephone to report their misconduct. None of these incidents involved use of a weapon or physical threat to a customer. Robinson produced no statistical evidence to show that the station was located in a high-crime area. Simply stated, Robinson failed *441 to produce any evidence tending to show that the incident of which she complains was foreseeable to any of the defendants.
In Dye v. Schwegmann Brothers Giant Supermarkets, Inc., 627 So.2d 688, 692 (La. App. 4th Cir.1993), writ denied, 93-3111 (La. 3/11/94), 634 So.2d 401, this Court held:
While it is true that courts have recognized a duty to protect under these circumstances [to protect patrons from inarticulated criminal conduct that may be committed by unnamed and unknowable third persons at some indefinite and unknown time in the future], this duty has been placed only on those businesses which have a unique relationship to customershotels to their guests, hospitals to their patients, common carriers to their customers. In these situations the guests, patients, and customers have placed their safety in the hands of hotels, hospitals, and common carriers who in turn have assumed the responsibility for their welfare. But generally, businesses have never been held to be the insurer of the safety of their customers from third party criminal acts. Coblentz v. North Peters Parking, Inc., 533 So.2d 98 (La.App. 4th Cir.1988).
We reject Robinson's argument that Dye has been overruled by Kenney v. Cox, 95-0126 (La. 3/30/95), 652 So.2d 992. In Kenney, plaintiffs' decedent was sexually assaulted and murdered in the parking lot of the New Orleans Towers, a residence for the elderly, when she was visiting her grandmother, a New Orleans Towers resident. The plaintiffs offered evidence that the advertisements for this institution promised that a security guard would be provided around the clock, listed a lighted parking lot as an "extra", and advertised that with its residency requirement of "62 years of age or older, handicapped or disabled" New Orleans Towers was "designed and staffed to insure the maximum safety and convenience for its residents," adding that "a security guard will be provided around the clock for the added safety and convenience of each resident." Plaintiffs provided deposition testimony that at the time of the abduction the only security system in place was that maintenance workers and housekeepers were supposed to keep their eyes open for possible security problems arising in the course of their regular duties. Defendants conceded that at the time of the attack no security guard was on duty. See, Kenney v. Cox, 94-1110 (La.App. 4 Cir. 12/15/94), 649 So.2d 15, 16 at footnotes 1 and 2, writ granted and judgment vacated, 95-0126 (La. 3/30/95), 652 So.2d 992. In its brief per curiam opinion, the Supreme Court held:
A summary judgment was granted when it is not clear that no legal duty was owed to the victim. Also there appear to be disputed issues of fact the resolution of which would aid in deciding the duty question. Trial of the matter is necessary to resolve the case. Id.

The per curiam cites no authority, and does not mention, much less overrule, the Dye holding. We note that the Louisiana Supreme Court denied an application for writs in Dye just 19 days prior to its decision in Kenney. We cannot accept Robinson's argument that the Supreme Court overruled, without specific citation, an opinion as to which it had denied writs less than three weeks previously. Indeed, the per curiam is consistent with the above-quoted language from Dye. The Supreme Court apparently viewed Kenney as a case in which the material fact that this institution for the elderly and infirm advertised itself as providing "maximum security" could evidence the type of special relationship referred to in Dye as creating an actionable duty.
Kenney is clearly inapposite to the instant case. The Chevron station did not advertise itself as a safe haven even for the elderly and infirm, nor did it hold itself out as a place of "maximum security" for its customers. It clearly does not come within the exceptions noted in Dye and by implication in Kenney where a higher duty based on a particular relationship may be owed. Robinson has not offered any evidence of a higher duty arising by law (e.g. the duty of the innkeeper or common carrier) or by action of the defendants (e.g. the promises offered in New Orleans Towers' advertising).
Robinson contends that defendants are liable under the theory that defendants had a duty arising out of an impending assault on *442 the gas station. The cases on which Robinson relies in support of this theory are inapposite.
In Anderson v. Clements, 284 So.2d 341 (La.App. 4th Cir.1973), plaintiff was shot after an altercation in a poolroom. Plaintiff won a pool game against Simon Washington. Clements, an employee whose job it was to rack balls and charge a fee of 5 cents per person per game, 25% of which was his compensation, asked Washington to pay the 10 cent fee. Washington refused, and Clements asked the manager to help him collect the money. The manager talked to Washington and gave him the ten cents to pay Clements. When Washington returned to the pool table, Clements refused to accept the money and refused to allow Washington to continue playing. Words were exchanged between Clements and Washington, and Washington left the premises. After being told by a customer that Washington was coming back to "cause trouble", Clements went to a room available to employees, obtained a pistol belonging to another employee and placed the gun under his shirt. Washington returned with a knife and approached Clements, who fired the pistol, killing Washington and shooting plaintiff in the genital organs. It was undisputed that when Clements was informed that Washington was returning to the poolroom to cause trouble, Clements did not warn plaintiff or any other patrons. It was undisputed that at the time Washington returned, the manager had gone for the day and Clements was the employee in charge of the poolroom. The court found that the proprietor failed in his duty to exercise reasonable care by failing to call the police in the event of a disturbance.
In Anderson, it was the poolroom's employee who engendered the initial altercation and introduced the pistol to the incident; it was he who, when he had specific knowledge of Washington's threatened return failed to call the police or to warn the patrons. In contrast, Hall had no specific knowledge or reason to believe that the shooters would follow the victims' truck from the Interstate. She had no part in the dispute between the shooters and the initial victims. It was the shooters, not Hall, who fired the offending shots. Hall fulfilled the duty imposed in Anderson to call the police. She had no superior knowledge of the situation that placed her in a better position than Robinson and Hurley to evaluate the danger.
In Davenport v. Nixon, 434 So.2d 1203 (La.App. 1st Cir.1983), the Nixons were innkeepers and plaintiff was a guest, thereby creating one of the special relationships contemplated by Dye. Plaintiff, who, the Nixons knew, was partially paralyzed, arrived at the defendants' motel at 2:45 a.m., when he was approached by a stranger who asked plaintiff to join him in his room for a drink. Plaintiff refused, and the man walked away. Plaintiff rang for Mrs. Nixon and told her he was concerned about taking out his money outside of the office because of the suspicious stranger and because he had a large amount of cash on his person and had trouble manipulating his fingers to handle the money. He asked to come inside the motel office to register, but Nixon refused, requiring him to pay through a service window. Nixon closed the window and went to bed, and plaintiff walked toward his truck, where he was robbed and stabbed by the man who had approached him earlier. Nixon had specific knowledge of the suspicious individual. Significantly, she also had the enhanced protective duty of an innkeeper. In further distinction to the instant case, Nixon had specific knowledge of plaintiff's infirmity and the fact that he was carrying a large amount of cash, which heightened the danger posed by the suspicious stranger. Further, the evidence showed that after she gave plaintiff his key, Mrs. Nixon closed the window and went to bed, making no effort to watch in order to see that he reached his room safely. She had access to two alarms that she could have sounded had she waited to observe the attack.
In Ballew v. Southland Corporation, 482 So.2d 890 (La.App.2d Cir.1986), the rapist, a large man dressed only in yellow gym shorts, had been in the defendant's convenience store for 15 to 30 minutes prior to the attack, asking customers for money and asking the clerk to use the store's private telephone. Plaintiff told the clerk she was afraid of the man. The clerk rang up plaintiff's purchase *443 and, while the clerk and the plaintiff were talking, the rapist came back in. The clerk told him since he had no money he should leave the store. He then grabbed plaintiff, dragged her outside to the back of the store and forcibly raped her. The clerk did not call the police until the rapist had grabbed the victim. In the case at bar, the shooting began as the criminals' car pulled along the street in front of the gas station. There was no 15 to 30 minute period of time during which suspicious activity occurred. Unlike the convenience store clerk in Ballew, Hall called 9-1-1 immediately when the original victims' truck pulled into the station, before there was any reason to believe that the shooters would follow.
In Jones v. Kwik Karol and Ginalco, Inc., 490 So.2d 664 (La.App.2d Cir.1986), plaintiff, a black man, drove to a convenience store at 8:30 p.m. and parked behind a car that had its doors open, but whose two white male occupants were not pumping gas. Plaintiff entered the store to prepay for his gas and asked the attendant about the other car. The attendant said he suspected they were trying to obtain gas without paying for it. Plaintiff suggested that the attendant call the police, but he refused. Plaintiff started to fill his car when the two white men began to harass him verbally. A white woman, also pumping gas, told the men to stop harassing plaintiff, and they temporarily withdrew. Shortly thereafter, they moved toward plaintiff, who asked a nearby woman to call the attendant. She did so and the men again withdrew. When plaintiff finished pumping gas, he walked toward the store for his receipt as one of the men came out of the store. When he called plaintiff a "black pervert", plaintiff asked why the men chose to bother him. At that point, the man struck plaintiff in the eye, the second man joined and they beat and injured plaintiff. The attendant had not called the police during the entire course of the incident. The court found that the attendant had knowledge of the two men's intended criminal conduct and by reason of that knowledge a duty to plaintiff. Robinson has not offered evidence of similar knowledge giving rise to a duty on the part of these defendants.
In Hanewinckel v. St. Paul's Property & Liability Insurance Co., 611 So.2d 174 (La. App. 5th Cir.1992), writ denied, 614 So.2d 65 (La.1993), a nurse was car-jacked in an open, publicly accessible Ochsner Hospital parking lot at about 5:30 a.m. Another hospital employee saw what was happening, and immediately notified hospital security. After a short search, security personnel saw plaintiff and her attacker on the top of the levee and rescued plaintiff. The court resolved this case based on the Harris standard: once the hospital hired a security force, it assumed a duty to provide reasonably effective security. This case is totally inapposite to the instant case, where the reasonableness of security hired by an owner is not at issue. Robinson has not offered any evidence that would require a finding that a reasonably prudent owner should have provided security at the Chevron station. Absent provision of a security force, Harris and Hanewinckel are inapposite.

CONCLUSION
There exists no issue of material fact as to either of Robinson's alleged bases of liability. There is no evidence of prior crimes at the location. There is no evidence that the incident constituted an impending assault giving rise to a duty owed by defendants to Robinson, nor is there evidence of any breach, were such a duty found to exist. We therefore affirm the trial court's judgment granting summary judgment in favor of defendants, dismissing the petition of Dawn Marie Robinson with prejudice at her cost.
AFFIRMED.
BARRY, J., dissents with reasons.
BARRY, Judge, dissents with reasons.
The majority does not strictly apply the law as to a summary judgment. The opinion declares that Robinson "failed to provide" evidence, but the defendants/movers must carry the burden of proof.
Robinson alleged breach of the duty of care for failure to provide adequate security to protect customers, failure to provide security in a known high crime area, failure to train employees to protect customers, and failure to provide safety in the face of impending *444 danger. The majority does not indicate what documentation was submitted. The defendants attached to their motion the depositions of Robinson and Bruce Hurley, an eyewitness. They argued that Robinson's testimony shows that she was not in fear until the second vehicle pulled up and the shooting started. Both Robinson and Hurley stated that the store was always locked that time of night and payment had to be made through a protective window.
Robinson submitted the deposition of Jennifer Hall, the service station employee, who stated that the policy was to keep the doors locked from 10:30 p.m. to 6:00 a.m. for "[s]ecurity reasons," and "because of the danger of the night shift." She said that "chances are we could get robbed ... if we open the door." To a supplemental opposition Robinson attached her deposition as well as her affidavit which declared that after she tried to help the victims in the truck, she looked for Hall in the pay window and all over the store area for two minutes. Robinson knew that she would need Hall's assistance to enter the locked store. Hall never opened the door to let her inside. Robinson also stated that Hall did not use the public address system to provide information or warnings to customers. Robinson attached three pictures and a diagram of the service station and a copy of a Louisiana Fifth Circuit opinion. Robinson argued that there was a duty to train Hall as to emergency procedures, to provide the same security to patrons as to the station's employee, and to conduct a security evaluation.
To satisfy their burden, the party filing the motion for summary judgment has to clearly show the truth of the facts asserted. Summary judgment is not to be used as a substitute for trial on the merits. Myers v. Omni Hotel, Inc., Inc., 94-2004 (La.App. 4 Cir. 4/13/95), 654 So.2d 771. Any doubt shall be resolved against the mover and in favor of trial on the merits. Raine v. CECO Corp., 627 So.2d 713 (La.App. 4th Cir.1993).
The movers/defendants' supporting affidavits and documents must be scrutinized closely while those of the opponent are to be indulgently treated. Only if the mover's supporting documents are sufficient, does the burden shift to the opposing party to show a material issue of material fact. Barham & Churchill v. Campbell & Associates, 503 So.2d 576 (La.App. 4th Cir.1987), writ denied, 503 So.2d 1018 (La.1987). A summary judgment is seldom appropriate in negligence cases where a decision turns on whether or not defendant's conduct is a tort. Palazzo v. Baker, 94-1244 (La.App. 4 Cir. 1/31/95), 652 So.2d 10, writ denied, 95-1264 (La. 6/23/95), 656 So.2d 1035; Pickett v. Jacob Schoen and Son, Inc., 488 So.2d 1257 (La.App. 4th Cir. 1986).
The majority upholds the trial court's determination that the defendants owed no duty to protect Robinson from the criminal activity that resulted in her injury. The trial court stated that a shopkeeper's duty to provide security presupposes a dangerous location: "Plaintiff has not alleged, nor proved, that Yousuf's Chevron was such a dangerous location." I disagree. Robinson did allege that the station was in a high crime area and her burden to prove that allegation is at trial. Robinson also argues that the defendants had a duty to protect her against impending danger as well as the duties to train station employees for emergencies and conduct security evaluations. The defendants had the burden to show that there is no genuine issue of fact as to the duty owed to Robinson.
The only issue before this Court is whether defendants carried their burden. If not, the burden never shifted to Robinson. The cases cited in the majority opinion as to a merchant's duty to protect patrons, including Dye v. Schwegmann Brothers Giant Supermarkets, Inc., 627 So.2d 688 (La.App. 4th Cir.1993), writ denied, 93-3111 (La. 3/11/94), 634 So.2d 401, involve appeals after trials, not summary judgments. Although the Dye Court stated that "in the absence of other factors, we decline to hold that a grocer owes a general duty to protect its customers from third party criminal acts," Id. at 692, the analysis did not end there (as it did here with a summary judgment). This Court then found that Schwegmann had not breached its duty to provide a reasonably safe place to purchase food after considering crime statistics, the store's security staff members, and *445 their conduct; Schwegmann, which provided security personnel, was found not liable for the negligent actions of its employees. Id. In Dye two judges concurred and two dissented and the Supreme Court denied writs.
In Mundy v. Department of Health and Human Resources, 620 So.2d 811 (La.1993), the Louisiana Supreme Court declared that the general duty of the owner of a facility is reasonable care for the safety of persons on his premises and not exposing such persons to an unreasonable risk of injury. The majority quotes Mundy which adopted the Restatement of Torts language as to when a proprietor may be under a duty to take precautions against criminal conduct, but then states that there was "no evidence of a single prior criminal act at or in the vicinity of the station." However, the defendants/movers had the burden of showing that there existed no genuine issue of material fact as to Robinson's allegations as to their duty to her.
The majority states the "only evidence ... concerning foreseeability of the drive-by shooting" was Hall's testimony (deposition testimony submitted by Robinson in opposition) that her three to five calls to the police from the service station involved irate customers beating the air machine, kicking the drawer, or cursing at her; she did not feel that a security guard was needed or that the station was a dangerous place "if you do your job in the way that it is supposed to be done, you take all of precautions you are supposed to take." In other words, the service station was not a dangerous place for the employee locked inside the building if she was especially cautious.
Foreseeability is generally considered in the duty/risk analysis. This is a fine line between whether a duty was owed and whether the risk and harm were within the scope of protection afforded. Although the cases declare that the question of whether a duty exists is considered a question of law, Id. at 811, the cases involve trials and discuss whether the duty was breached and whether the conduct was the legal cause of the injury (duty/risk). The question of duty/risk in a specific case is a mixed question of law and fact which must be decided by the jury or factfinder. As noted by Justice Dennis in his concurrence in Kenney v. Cox, 95-0126 (La. 3/30/95), 652 So.2d 992 (where the Supreme Court reversed a summary judgment because it was not clear that no legal duty was owed to the victim), "our jurisprudence has not clarified the distinction between the existence of a general duty of care (a legal question) and the `legal cause' or `duty/risk' question of the particular duty owed in a particular factual context (a mixed question of law and fact)...."
The defendants did not carry their burden of establishing that there was no genuine issue of material fact as to whether a duty was owed to Robinson under the circumstances of this case. I would reverse and remand for trial.
NOTES
[1] Both parties offered deposition testimony in support of their respective positions.
[2] Hall testified that the elapsed time was 45 seconds to two minutes; Robinson testified the elapsed time was three to four minutes.