940 So.2d 118 (2006)
Jacqueline Raymond MACKEY, as Tutrix of the Minor Children, Tangeneshia Raymond, Anqueneshia Raymond, Pha'Derrica Washington & Madison Raymond and on Behalf of the Estate of Tynesia Raymond, Plaintiffs-Appellants,
v.
JONG'S SUPER VALUE # 2, Jermaine "Spike" Williams & East Carroll Parish Sheriff's Office, through its Sheriff, Mark Shumate, Defendants-Appellees.
No. 41,440-CA.
Court of Appeal of Louisiana, Second Circuit.
September 27, 2006.
*119 Samuel Thomas, Tallulah, for Appellants.
Cook, Yancey, King & Galloway by Brian A. Homza, Lila Johnson, Shreveport, for Appellee Jong's.
William P. Bryan, III, Baton Rouge, for Appellee, Greg Jones.
Before BROWN, STEWART, and DREW, JJ.
BROWN, Chief Judge.
Plaintiff, Jacqueline Raymond Mackey, as Tutrix of the Minor Children, Tangeneshia Raymond, Anqueneshia Raymond, Pha'Derrica Washington, and Madison Raymond, and on behalf of the Estate of Tynesia D. Raymond (hereinafter, "Mrs. Mackey"), appeals a summary judgment in favor of defendant, Jong's Super Value # 2 (hereinafter "Jong's"), dismissing her negligence claim. For the reasons stated herein, we affirm.

Facts
On October 21, 2002, Tyneshia Raymond was in the meat department of Jong's grocery store when she was confronted by her boyfriend (and the father of her fourth child), Jermaine "Spike" Williams, about money she had allegedly taken from him earlier without permission. During this confrontation Williams struck Ms. Raymond and, as a result, a Jong's employee had to break up the fight.
Upon being notified of the altercation, Jong's manager, Greg Jones, told his assistant, Lawanna Kelly, to call the police.[1] *120 Jones then immediately proceeded to the meat market where he encountered Williams, who was leaving the area. Jones asked Williams what happened and Williams responded that it was "nothing" and he was "gone." Williams then exited through the front door, leaving Jones to believe that the incident was over.
After Williams exited the store, Jones spoke with Ms. Raymond and asked her whether she would like to press charges. Ms. Raymond, however, ran to the front door of the store and began yelling derogatory remarks and racial slurs toward Williams. It was then that Williams ran back into the store with a gun and shot her. Jones called 911 and stated that Ms. Raymond had been shot and that an ambulance was needed. Ms. Raymond died from the gunshot wound.

Procedural History
Plaintiff filed suit against Jong's, Jermaine "Spike" Williams, and the East Carroll Parish Sheriff's Office through its sheriff, Mark Shumate, on October 20, 2003.[2] The suit alleged that Jong's acts were the cause in fact of Ms. Raymond's death and Jong's acts were listed as follows:
a) failing to provide a safe environment for customers;
b) failing to immediately notify the law enforcement officers of the physical and verbal abuse of Tynesia D. Raymond by Jermaine "Spike" Williams;
c) failing to escort Jermaine "Spike" Williams from the premises; and,
d) failure to maintain security on the premises for customers.
On May 31, 2005, defendant, Jong's, filed a motion for summary judgment. This motion, however, was denied on August 17, 2005.[3] The trial court denied the motion because of some existing confusion over the time line of events, but the court did decide that Jong's had no duty to post security guards on the premises.
After conducting more discovery to clear up the existing confusion over the time line of events, Jong's filed another motion for summary judgment, which was supplemented on November 15, 2005, December 1, 2005, and December 2, 2005. Oral argument on the motion for summary judgment was heard on December 5, 2005, at which time the trial court issued an oral judgment and reasons for judgment granting Jong's motion for summary judgment. Written judgment was issued on December 15, 2005, and it is from that judgment that plaintiff has appealed.
The trial court determined that the main issue was whether Jong's employees responded reasonably to the incident and the court found that there was a reasonable response. In so finding, the trial court bypassed the time line discrepanciesas they did not seem materialand instead focused on the fact that at least one call, and possibly two, was made from Jong's, and that, in conjunction with the other acts of the employees, this constituted a reasonable response.

*121 Discussion

Appellate courts review summary judgment de novo, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Goins v. Wal-Mart Stores, Inc., 01-1136 (La.11/28/01), 800 So.2d 783; DeBrun v. Tumbleweeds Gymnastics, Inc., 39,499 (La.App.2d Cir.04/06/05), 900 So.2d 253. The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). The procedure is favored under Louisiana law and shall be construed to accomplish these ends. Id. Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La. C.C.P. art. 966(B).
In the present case, plaintiff has asserted two negligence claims. Plaintiff first contends that defendant was negligent in failing to summon police during the initial altercation. She next claims that Jong's was negligent in failing to provide security.
Jong's points out that there is an absence of factual support for any of the allegations of negligence. To determine this, a duty-risk analysis is applied. Under the duty-risk analysis a plaintiff must prove that the conduct in question was the cause-in-fact of the resulting harm, the defendant owed a duty of care to the plaintiff, the requisite duty was breached by the defendant, and the risk of harm was within the scope of the protection afforded by the duty breached. Smith v. AAA Travel Agency, 37,278 (La.App.2d Cir.10/29/03), 859 So.2d 286, writs denied, 03-3248, 03-3329 (La.02/06/04), 865 So.2d 731, 735.
Duty to Summon Police
A business establishment such as Jong's owes a duty to its patrons to exercise reasonable care to protect them from injury. Ballew v. Southland Corporation, 482 So.2d 890 (La.App.2d Cir.01/22/86). This duty, however, does not extend to the unforeseeable or unanticipated criminal acts by independent third persons. Id. Where a business owner owes a duty of reasonable care to protect patrons from criminal acts of third parties, that duty can be discharged by summoning the police at the time the proprietor knows or should reasonably anticipate that the third person poses a probable danger. Rodriguez v. New Orleans Public Service, Inc., 400 So.2d 884 (La.1981); Ballew, supra.
In the case sub judice, Jong's contends that its employees summoned the police as soon as they became aware of an altercation between Ms. Raymond and Williams. Plaintiff, however, asserts that defendant's employee, Lawanna Kelly, did not call police at all and that Greg Jones only called when Ms. Raymond was already dead. Plaintiff's contention, however, is not supported by the evidence in the record or her original petition.
Although the East Carroll Sheriff's log, the 911 computer printouts, and the Lake Providence Police log have different times listed for a particular event, this does not take away from the fact that at approximately 9:01 a.m. a call from Jong's reporting a disturbance was made to 911. The East Carroll Parish 911 operator, Hope Mills, testified that this disturbance call was received prior to the shooting of Ms. Raymond. In addition to the 911 computer printout stating that there was a disturbance, Mrs. Mackey's original petition conceded the fact that a Jong's employee *122 called 911 reporting a disturbance.[4] Whether Ms. Kelly or Jones called is of no consequence; Jong's duty was discharged when one of its employees summoned the police as soon as he or she became aware of the potential danger posed.
Mrs. Mackey alternatively contends that even if there was a call made before the shooting took place, that call was made long after Jong's knew or should have known of the potential danger. To substantiate this assertion, plaintiff puts forth the affidavit of James Promise, the man who drove Williams to Jong's the morning of the incident. Mrs. Mackey testified that Williams was Promise's crack dealer. In his affidavit, Promise states that Williams was in Jong's at least 20 minutes before he retrieved his pistol. However, there is overwhelmingly reliable evidence to the contrary. Because a person's estimation of time is not always completely accurate, defendant has entered the time-coded video surveillance tape into evidence. This surveillance tape shows Williams entering the store, then leaving the store approximately two to three minutes later, then returning back into the store, at which time he shot Ms. Raymond before once again exiting the store. The entire event unfolded in a matter of five minutes. With the video surveillance tape showing the short time span of the entirety of the occurrence, we find, as did the trial court, that Promise's statement is clearly unreliable.
In light of the aforementioned, it is evident that defendant has shown an absence of factual support for plaintiff's claim that Jong's breached its duty to summon the authorities. No further analysis of this claim is thus warranted.
Duty to Provide Security
Although business owners are not the insurers of their patrons' safety, they do have a duty to implement reasonable measures to protect their patrons from criminal acts when those acts are foreseeable. Posecai v. Wal-Mart Stores, Inc., 99-1222 (La.11/30/99), 752 So.2d 762; Smith, supra. Generally, however, there is no duty to protect patrons from the criminal acts of third persons. Id; Harris v. Pizza Hut of Louisiana, Inc., 455 So.2d 1364 (La.1984). Therefore, this duty only arises under limited circumstances, when the criminal act in question was reasonably foreseeable to the owner of the business. Posecai, supra.
The Louisiana Supreme Court in Posecai, supra, recently adopted a balancing test to determine whether a business owes a duty of care to protect its customers from the criminal acts of third persons. This test weighs the foreseeability of the crime risk on defendant's property and the gravity of the risk to determine the existence and the extent of defendant's duty. Id. More specifically, the Posecai court held:
The greater the foreseeability and gravity of the harm, the greater the duty of care that will be imposed on the business. A very high degree of foreseeability is required to give rise to a duty to post security guards, but a lower degree of foreseeability may support a duty to implement lesser security measures such as using surveillance cameras . . .

*123 The foreseeability and gravity of the harm are to be determined by the facts and circumstances of the case. The most important factor to be considered is the existence, frequency and similarity of prior incidents of crime on the premises, but the location, nature and condition of the property should also be taken into account. It is highly unlikely that a crime risk will be sufficiently foreseeable for the imposition of a duty to provide security guards if there have not been previous instances of crime on the business' premises.
Posecai, supra at 768. In that case, the plaintiff sued Wal-Mart Stores, Inc., after being robbed in the parking lot of Sam's Wholesale Club in Kenner. The supreme court in Posecai found that during the prior six and one-half years the parking lot had been the scene of three predatory offenses and that the area surrounding the store was considered "a high crime area." This, however, was not enough for the supreme court to find that defendant had a duty to post security guards in the parking lot.
In the present case, Mrs. Mackey contends that Jong's had a duty to provide security since it was located in a "high crime area." Plaintiff's contention is premised on the affidavits of two local residents, as well as one executed by the plaintiff herself, stating that in the surrounding area there had been six to seven murders. Plaintiff even asserted that Jong's parking lot had been the site of a shooting. This assertion, however, was made without any additional facts; we do not know when the alleged shooting took place. What we do know is that in the five years prior to this incident, there were not any criminal offenses committed on Jong's premises.[5] It is also relevant to note that Ms. Raymond was shot at 9:00 a.m., and plaintiff's own security expert, Raymond Pendelton, testified that he did not see that as a high crime time of day. Accordingly, we find that even though the area surrounding Jong's may have been a high crime area, the foreseeability and gravity of harm at Jong's at 9:00 a.m. was extremely minimal.
Therefore, in accordance with the supreme court's decision in Posecai, supra, we hold, based on the facts and circumstances at the time of the shooting, that Jong's owed no duty to provide security guards. Because Jong's did not owe a duty to provide security, defendant has shown an absence of factual support for the duty element of the duty-risk analysis.[6]
Issues of Material FactConflicting Times and Contradictory Testimony
In order to deny a motion for summary judgment, the nonmoving party must show that there is a genuine issue as to material fact. La. C.C.P. art. 966. A fact is material if its existence or nonexistence is essential to a plaintiff's cause of action under the applicable theory of recovery. DeBrun, supra. Therefore, for there to be a genuine issue as to material fact in the present case, the fact at issue must be essential for Mrs. Mackey to prove her negligence claim.
Plaintiff asserts that the trial court erred in granting defendant's motion for summary judgment since Ms. Kelly gave contradictory testimony in two depositions. In her first deposition, Ms. Kelly stated *124 she was looking for papers for Jones and then in her second deposition she stated she was not looking for papers. This contradictory evidence, plaintiff contends, gives rise to two interpretations of what occurred. Although we find that Ms. Kelly did give contradictory testimony about looking for papers, it does not give rise to a genuine issue as to material fact. Whether Ms. Kelly was looking for papers for Jones is not essential for plaintiff to prove her negligence claim.
Plaintiff next asserts that the conflicting time lines give rise to a genuine issue of material fact. As we discussed above, the discrepancies in times listed by various agencies and exhibits is not sufficient enough to create a genuine issue of material fact. Whether the disturbance call was at 9:01 a.m. or at 9:03 a.m. is irrelevant; all that matters is that a disturbance call was made and the record clearly shows that one was.

Conclusion
For the reasons set forth above, the judgment of the trial court granting summary judgment in favor of defendant, Jong's Super Value # 2 and dismissing plaintiff's claims, is AFFIRMED.
NOTES
[1] Whether Ms. Kelly called police is in dispute. Plaintiff contends that Ms. Kelly did not call police and that it was Jones who called police after Ms. Raymond was shot. Ms. Kelly, however, testified in her deposition that she did call police.
[2] The original petition was later amended and corrected to name Sheriff Mark Shumate of East Carroll Parish as defendant, not the East Carroll Parish Sheriff's Office. The trial court granted summary judgment in favor of Sheriff Shumate on June 13, 2005.
[3] Plaintiff filed a motion for summary judgment on August 17, 2005, which was denied by the trial court on December 5, 2005. Plaintiff has not raised any assignments of error regarding the denial of her motion for summary judgment.
[4] In her original petition, plaintiff also filed suit against the East Carroll Sheriff for failing to immediately respond to the disturbance call. The East Carroll Sheriff moved for summary judgment and this motion was granted on June 13, 2005. After reviewing the record, we note that the first sign of plaintiff's claimthat the police were not called until after Ms. Raymond's deathappears after the trial court granted the Sheriff's motion for summary judgment.
[5] This finding is based on the testimony of Greg Jones. The store manager testified that he had been working at Jong's for five years and during that time no criminal offenses had taken place on Jong's premises.
[6] Because we conclude that there is an absence of factual support for the duty element, we need not discuss factual support for the other elements of a negligence action.