| | | |
|---|---|---|
| ANDREA DURBIN O'STEEN WIFE OF/AND LARRY O'STEEN | * | NO. 2019-CA-0633 |
| | * | |
| | | COURT OF APPEAL |
| VERSUS | * | |
| | | FOURTH CIRCUIT |
| ENTERGY SERVICES, INC. AND THE CITY OF NEW ORLEANS | * | |
| | | STATE OF LOUISIANA |
| | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2015-04551, DIVISION "J"
Honorable D. Nicole Sheppard, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Chief Judge James F. McKay, III, Judge Daniel L. Dysart, Judge Dale N. Atkins)

Joseph M. Bruno, Jr.
Joseph M. Bruno
Stephen Paul Bruno
BRUNO & BRUNO, LLP
855 Baronne Street
New Orleans, LA 70113

      COUNSEL FOR PLAINTIFF/APPELLANT

Ashley Ian Smith
SEWERAGE AND WATER BOARD OF NEW ORLEANS
625 St. Joseph Street, Room 201
New Orleans, LA 70165

Darryl Harrison, Deputy Special Counsel

Yolanda Y. Grinstead, Special Counsel

      COUNSEL FOR DEFENDANT/APPELLEE

**REVERSED AND REMANDED**
**JANUARY 22, 2020**

Appellants Andrea Durbin O'Steen wife of/and Larry O'Steen (the "O'Steens") appeal the trial court's judgment granting a motion for summary judgment on behalf of the Sewerage and Water Board of New Orleans (the "S&WB") and dismissing all claims with prejudice. For the following reasons, we reverse the ruling of the trial court and remand for further proceedings.

## FACTUAL AND PROCEDURAL HISTORY

On the evening of January 26, 2015, the O'Steens left a bar located at the corner of Bourbon and Dumaine Streets in New Orleans. They headed to their home located at 1123 N. Villere Street. While traveling home, Mrs. O'Steen was riding her tricycle in the 800 block of Dumaine Street when she struck an unmarked square hole that had been cut into the pavement in front of the driveway of 820 Dumaine Street. Mrs. O'Steen was thrown from her tricycle, knocked unconscious and suffered injuries to her head, left collarbone, left ear, neck, and back. She sought treatment for her injuries at University Medical Center.

On May 12, 2015, the O'Steens filed a petition for damages, naming Entergy Services, Inc. and The City of New Orleans as defendants. Mrs. O'Steen claimed damages for past, present, and future material pain and suffering; past, present, and

future mental anguish; past, present and future loss of enjoyment of life; property damage; and past and future medical expenses. Mr. O'Steen claimed damages for the loss of consortium, including loss of love, affection, companionship, and moral support. He also claimed damages for decreased sexual relations with his wife and the loss of ability to perform household services as a result of the injuries sustained by Mrs. O'Steen.

Additional defendants were added by the O'Steens' supplemental and amending petition for damages and second supplemental and amending petition for damages. These defendants included: Fleming Construction Company ("Fleming"), who allegedly contracted with the S&WB to do repaving work on Dumaine Street around the time of Mrs. O'Steen's accident; Boh Brothers Construction Company, LLC; the S&WB; Entergy New Orleans, Inc.; and Amerisure Insurance Company ("Amerisure"), Fleming's insurer. Throughout the case, several defendants were dismissed, leaving only three defendants remaining at the time relevant to this appeal: the S&WB, Fleming, and Amerisure.

Fleming and the S&WB each filed motions for summary judgment on October 25, 2018 and November 20, 2018, respectively. They argued that the plaintiffs could not show that they (1) created the hole Mrs. O'Steen struck; (2) had custody or control over the accident site; or (3) if they had custody or control, they had no actual or constructive notice of the defect in the road so as to impose liability under La. R.S. 9:2800. In support of the motions for summary judgment, Fleming and the S&WB attached the O'Steens' answers to interrogatories and requests for production of documents. They also attached portions of Mrs. O'Steen's October 5, 2016 deposition and a statement of uncontested facts, which included as attachments the October 11, 2011 repaving contract between Fleming

and the S&WB, as well as three work orders for the 800 block of Dumaine Street in 2014 and 2015. The contract between the S&WB and Fleming provided that Fleming would "furnish at its own proper cost and expense all the necessary labor and equipment and all materials..." associated with "repaving open cuts in streets, driveways, [and] sidewalks resulting from the repair to the Sewerage and Water Board of New Orleans Underground Utilities" in accordance with the Louisiana Uniform Public Work Bid submitted by Fleming on August 19, 2011.

The first work order attached to the motions for summary judgment, dated December 16, 2014, indicated there was a hole[1] cut in the concrete in front of 817 Dumaine Street to repair a leak that was discovered. According to the work order, the leak was repaired, and the hole was backfilled with river sand and cold mill. The second work order, dated January 5, 2015, indicated that a four by eight foot hole was cut in front of 817 Dumaine Street and that temporary asphalt was poured into that hole. The third work order, dated February 3, 2015, indicated that there was pavement restoration performed at 817 Dumaine Street and that the site needed investigation. All three work orders stated that there was one more "problem" in the street that was not listed or repaired in the work orders. Fleming and the S&WB contended that these work orders established that while work was performed across the street from where Mrs. O'Steen was injured, at no point did this work include the hole that Mrs. O'Steen ran into.

On March 15, 2019, the O'Steens filed an opposition to the motions for summary judgment. The O'Steens argued that, because the S&WB (through its subcontractor Fleming) was performing excavation and refill work on the 800

---

[1] The work order is somewhat unclear as to the size of the hole. The O'Steens and the S&WB disagree as to whether the work order states there was one two and a half foot by five foot hole cut or two five foot by five foot holes cut.

block of Dumaine Street at the time of Mrs. O'Steen's accident, the S&WB caused the hole Mrs. O'Steen struck and neglected to mark the exposed hole (which the O'Steens allege was seven feet by seven feet), making it unreasonably dangerous. The O'Steens further contended that there was a genuine issue of material fact as to who cut the hole and who had custody or control over the accident site. In support of their opposition to the motions for summary judgment, the O'Steens included many of the same exhibits S&WB and Fleming attached in support of their motions for summary judgment, but also included an affidavit from attorney David Schulingkamp. Mr. Schulingkamp attested that he resided at 820 Dumaine Street, that he saw the hole which Mrs. O'Steen struck, and that it prevented him from entering and exiting his driveway for several days in January 2015. The O'Steens also attached a set of photographs to illustrate the block of Dumaine Street where the accident occurred and another set of photographs of nearby French Quarter streets. They claimed the photographs showed holes the S&WB cut into streets that appeared to be similar to the hole Mrs. O'Steen hit.

On March 22, 2019, the S&WB replied to the O'Steens' opposition and moved to strike the photographs. The S&WB argued that, because the photographs were taken by the O'Steens' counsel, they could not properly be authenticated because counsel could not properly act as a witness while simultaneously acting as counsel of record under the Louisiana Rules of Professional Conduct. The S&WB also moved to strike the photographs because they are not the types of documents which can be filed in opposition to a motion for summary judgment under La. C.C.P. art. 966(A)(4).

The trial court heard the motions for summary judgment on March 29, 2019. After the hearing, the trial court struck the O'Steens' photographs and denied

4

Fleming's motion for summary judgment, finding that Fleming had "ownership of the liability for the section of the street at issue on January 25, 2015."[2] The trial court granted the S&WB's motion for summary judgment and dismissed all claims against the S&WB with prejudice. The trial court found that there was "little factual support" for the contention that the S&WB had custody or control of the area of the street where the accident occurred or that the S&WB had received actual or constructive notice of the hole. The O'Steens did not object to the ruling on the photographs at the hearing.

This appeal followed.

### DISCUSSION

The O'Steens assign two errors on appeal. First, they argue the trial court erred in granting the S&WB's motion for summary judgment because genuine issues of material fact exist with respect to the S&WB's custody and control of the 800 block of Dumaine Street and its notice of the hole Mrs. O'Steen struck. Second, they argue the trial court erred in striking the photographs the O'Steens attached to their opposition to the motions for summary judgment. Because we find that genuine issues of material fact exist and the S&WB's motion for summary judgment should have been denied, we pretermit the issue of the propriety of striking the O'Steens' photographs

The O'Steens argued the trial court erred in granting the S&WB's motion for summary judgment because genuine issues of material fact exist as to whether the S&WB had care or control of, or created, the hole which Mrs. O'Steen struck, and the S&WB can be held liable for the damages Mrs. O'Steen sustained. The O'Steens further argue that genuine issues of material fact exist as to whether the

---

[2] The denial of Fleming's motion for summary judgment is not before us in this appeal.

5

S&WB had actual or constructive notice of the hole and did not cure it, despite an opportunity to do so, making the S&WB liable for damages under La. R.S. 9:2800. We agree.

"Summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria as the trial court in determining whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Vise v. Olivier House Prop. Mgmt., LLC*, 2016-0741, p. 3 (La. App. 4 Cir. 4/12/17), ___ So.3d ___, ___, 2017 WL 1365316, *2, (quoting *Samaha v. Rau*, 2007-1726, pp. 3-4 (La. 2/26/08), 977 So.2d 880, 882-83.) "A fact is material if it is essential to plaintiff's cause of action under the applicable theory of recovery and without which plaintiff could not prevail. Generally, material facts are those that potentially insure or preclude recovery, affect the litigant's ultimate success, or determine the outcome of a legal dispute." *Robinson v. Yousuf*, 1995-1476, p. 4 (La. App. 4 Cir. 1/19/96), 668 So.2d 436, 439, *writ denied*, 1996-0430 (La. 3/29/96), 670 So.2d 1232 (citing *Prado v. Sloman Neptun Schiffahrts, A.G.*, 611 So.2d 691 (La. App. 4th Cir.1992)).

"A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate." *Hines v. Garrett*, 2004-0806, p. 1 (La. 6/25/04), 876 So.2d 764, 765-66 (citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 1993-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751). "In ruling on a motion for summary judgment, the judge's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Hines*, 2004-0806, p. 1, 876 So.2d at 765. Any doubt about whether there are genuine issues of material fact is to be resolved

6

against the granting of summary judgment and in favor of trial on the merits. *Sanders v. Hercules Sheet Metal, Inc.*, 385 So. 2d 772, 775 (La. 1980); *Chaisson v. Domingue*, 372 So.2d 1225 (La. 1979); *Employers' Surplus Line Ins. Co. v. City of Baton Rouge*, 362 So.2d 561 (La. 1978).

Because the S&WB is a public entity, in order for the O'Steens to hold the S&WB liable for their damages, they must comport with La. R.S. 9:2800. La. R.S. 9:2800 states:

> A. A public entity is responsible under Civil Code Article 2317 for damages caused by the condition of buildings within its care and custody.
>
> ***
>
> C. Except as provided for in Subsections A and B of this Section, no person shall have a cause of action based solely upon liability imposed under Civil Code Article 2317 against a public entity for damages caused by the condition of things within its care and custody unless the public entity had actual or constructive notice of the particular vice or defect which caused the damage prior to the occurrence, and the public entity has had a reasonable opportunity to remedy the defect and has failed to do so.

Thus, under La. R.S. 9:2800, "the plaintiff must prove that: (1) the thing which caused the damage was owned or in the custody of the public entity; (2) the thing was defective due to a condition creating an unreasonable risk of harm; (3) the entity had actual or constructive notice of the defective condition yet failed to take corrective action within a reasonable period of time; and (4) the defect was the cause of the plaintiff's harm." *Sewell v. Sewerage & Water Bd. of New Orleans*, 2018-0996, pp. 8-9 (La. App. 4 Cir. 5/29/19), ___ So.3d ___, ___, 2019 WL 2305673, *4, *writ denied*, 2019-01166 (La. 10/15/19), 280 So.3d 612. *See also Bridgewater v. New Orleans Regional Transit Auth.*, 2015-0922, p. 8 (La. App. 4 Cir. 3/9/16), 190 So.3d 408, 413.

7

### *Care and Custody*

The O'Steens argue that the work orders show that Fleming was performing work on the same block as Mrs. O'Steen's accident in the weeks before and after the accident subject to a contract it had with the S&WB; therefore, the work orders, establish that the S&WB had custody and control of the site through its subcontractor, Fleming. The O'Steens argue that this is proven by the fact that Fleming had done work immediately across the street from the site and the work orders specifically mention that there was one more "problem" in the street that was not listed or repaired.

The S&WB counters that, even though it is the entity tasked with construction, control, and maintenance of the public water, sewerage, and drainage systems of The City of New Orleans under La. R.S. 33:4071, it cannot be charged with maintaining the general condition of the streets and sidewalks or overseeing other utilities, as this Court found in *Armstrong v. City of New Orleans*, 539 So.2d 1000, 1002-03 (La. App. 4 Cir. 1989). We find that the S&WB's reliance on *Armstrong* is misplaced.

In *Armstrong*, the plaintiff sued the S&WB when he sustained damages after driving his taxi cab into a pothole. However, he presented no evidence that the S&WB was responsible for or created the pothole. The only thing he demonstrated was that days before the accident, the S&WB had completed some work in the area. This Court found that there was no evidence showing that the S&WB had a duty to maintain the street or remedy the pothole.

The facts of the instant case are distinguishable from those in *Armstrong* in two ways. First, as both the O'Steens and the S&WB note, work—which was being performed by Fleming subject to its contract with the S&WB—in the area of

8

the hole where Mrs. O'Steen fell had not been completed at the time the accident occurred. Indeed, according to the work orders submitted both in support of and in opposition to the motions for summary judgment, Fleming began conducting pavement cutting and repaving work beginning December 16, 2014, several weeks before to the accident. The work continued until February 2015, approximately two weeks after the accident. There is also some discrepancy about the size of the holes that were created as a part of that work and how many holes there were. Nevertheless, the last of the three work orders from February 2015 indicates that even then, the area needed investigation, indicating that work was not yet complete. At the time of Mrs. O'Steen's accident, Fleming and the S&WB were still operating in the area directly across the street. Therefore, reasonable persons could disagree on whether the S&WB and Fleming were still working in the area of the accident site at the time of the accident, giving them custody and control of the area.

Second, the hole that led to the plaintiff's damages in *Armstrong* was a pothole. The O'Steens' affidavits, Mr. Shulingkamp's affidavit, and affidavits of other witnesses present at the time of Mrs. O'Steen's accident establish that the hole that Mrs. O'Steen ran into was an excavation, caused by machinery used to cut pavement. The *Armstrong* court found that the S&WB was not liable for the plaintiff's injuries partly because a pothole is a defect that can occur over time without the purposeful actions of any public entity. However, the same cannot be said of the hole Mrs. O'Steen ran into here. Some entity cut the hole in the pavement. The O'Steens have a heavy burden of showing that entity was the S&WB or that, because of their presence in the area, they had a duty to remedy the hole. Reasonable persons could disagree, however, as to whether the S&WB

created the hole or had a duty to remedy the hole based on the work it was doing on the same block at the same time of the accident.

Likewise, it should be noted that the trial court found that there was a genuine issue of material fact regarding Fleming's custody or control of the hole. There is nothing in the October 11, 2011 contract between the S&WB and Fleming which purports to transfer liability for damages caused by the repaving work from the S&WB to Fleming. The contract executed between the S&WB and Fleming clearly establishes that Fleming was to provide the labor, equipment, and materials associated with repaving necessary for the S&WB to repair to its underground utilities. This establishes that Fleming's work was on behalf of the S&WB as its contractor. Because Fleming was acting in the area at the direction of the S&WB as its contractor, the S&WB can be held liable for Fleming's actions. Therefore, a genuine issue of material fact exists as to custody and control.

### *Notice*

A genuine issue of material fact exists as to whether the S&WB had actual or constructive notice of the hole or if they created the hole such that notice is presumed. *Whatley v. City of Winnfield, Louisiana*, 2002-0015 (La. 3/22/02), 811 So.2d 939 (finding that where the defect that caused plaintiff's injuries could only have been created by a city actor working for a specific public entity, there is a presumption that the public entity had knowledge of the defect).

Here, the record reflects that the hole was cut by machinery used to cut pavement. A reasonable person could find that only a limited number of parties, such as public entities, would have access to equipment of that capacity. While the S&WB is one of the parties who has such equipment—and regularly uses it in making repairs—the record does not show that the S&WB is the only public entity

10

with access to such machinery who could have caused the hole such that notice of the defect is not required. Reasonable persons could disagree, however, on whether the S&WB and/or Fleming created the hole because of their work in the area at the time of the accident. If reasonable persons could find Fleming and/or the S&WB created the hole, the notice requirement is unnecessary because of the presumption of notice. An evaluation of the weight of the evidence to support such a finding is not appropriate in determining if a motion for summary judgment is warranted. *Hines*, 2004-0806, p. 1, 876 So.2d at 765.

Even if notice is not presumed, we find that a genuine issue of material fact exists as to whether the S&WB received actual or constructive notice of the defect. Under La. R.S. 9:2800, actual notice is given by "reporting the defect to a governmental employee who has a duty 'either to keep the property involved in good repair or to report dangerous conditions to the proper authorities." *Hanson v. Benelli*, 1997-1467, p. 15 (La. App. 4 Cir. 9/30/98), 719 So.2d 627, 636. Under La. R.S. 9:2800(D), "[c]onstructive notice shall mean the existence of facts which infer actual knowledge." Further, in *Gardner v. Louisiana Superdome*, 2013-1548, p. 6 (La. App. 4 Cir. 5/7/14), 144 So.3d 1105, 1109, the Louisiana Supreme Court stated that "constructive notice can be found if the conditions which caused the injury existed for such a period of time that those responsible, by the exercise of ordinary care and diligence, must have known of their existence in general and could have guarded the public from injury."

The S&WB's work orders in the record show that there was an unrepaired "problem" in the area of the worksite. A reasonable person could find that problem was indeed the hole Mrs. O'Steen hit, giving the S&WB actual notice of the hole. A reasonable person could also find that the S&WB had constructive notice of the

11

defect. The S&WB was working in the same block as the accident for several weeks before and after the accident. Therefore, a reasonable person could find that workers for Fleming and the S&WB would clearly be able to see and take notice of a hole that is seven feet by seven feet on the same block where they were working for a number of weeks. A reasonable person could also find that the S&WB could then have taken steps to guard the public from injury or repair the hole once they had notice for several weeks.

We therefore find that the trial court erred in granting the motion for summary judgment on behalf of the S&WB because genuine issues of material fact exist as to custody and notice. The ruling of the trial court is reversed.

## DECREE

For the foregoing reasons, we reverse the ruling of the trial court granting the S&WB's motion for summary judgment, and remand for further proceedings.

**REVERSED AND REMANDED**